525 F.2d 538
 WATKINS MOTOR LINES, INC., a freight corporation, et al.,
Plaintiffs-Appellants-Cross-Appellees,
v.
ZERO REFRIGERATED LINES, a Texas Corporation, Defendant-Appellee
and
Continental National Assurety Corporation, an Illinois
corporation, et al., Defendants-Appellees-Cross-Appellants.
 No. 75--1183, 75--1184
 United States Court of Appeals,
Seventh Circuit.
 Argued June 9, 1975.
Decided Aug. 11, 1975.
Rehearing Denied Jan. 29, 1976.
 
 John U. Vinson, Thomas M. Murphy, Tucson, Ariz., J. Patrick Herald, Chicago, Ill., for Watkins Motor Lines.
 Clark C. King, Jr., and John J. Berwanger, Chicago, Ill., for Zero Refrigerated Lines.
 Before CLARK, Associate Justice*, BAUER, Circuit Judge, and GRANT, District Judge.**
 PER CURIAM:
 
 
 1
 This is a diversity action brought by appellant Watkins Motor Lines (Watkins) and its insurance carrier against appellee Zero Refrigerated Lines (Zero) and its insurance carriers, seeking indemnification for damages. On cross-motions for summary judgment, the United States District Court for the Northern District of Illinois found for Zero. We affirm.
 
 
 2
 In January, 1968, Watkins and Zero entered into an interline agreement for the interchange of equipment which provided for the interchange of traffic with one company's equipment along the other company's routes. Up to April, 1974, there had been approximately 750 exchanges of equipment between Watkins and Zero, including those pursuant to a supplementary agreement in February of 1972. An indemnification contract was signed concurrently with the original interline agreement and was rewritten on June 2, 1971. This indemnification agreement was required by Zero before it would agree to interchange traffic and equipment with Watkins and provided that Watkins would hold Zero and its insurance underwriters 'harmless of any liability in connection with the use and operation of automotive equipment' by Watkins over routes on which various motor carrier regulatory bodies had authorized Zero to operate.
 
 
 3
 In February of 1972, Watkins contracted to haul a shipment of Girl Scout cookies from Elizabeth, New Jersey, to Tucson, Arizona, and assigned one William Nixon to make the delivery. Previously, Watkins, which did not have sufficient equipment to handle all of its shipments, had entered into a long term lease with Nixon to make available his tractor trailer rig on a 'trip lease' basis. The cookies were loaded onto Nixon's rig which bore the Watkins interchangeable name plate. Nixon and his co-driver David Reynolds, left for Arizona on February 23, 1972 on a through bill of lading. Since Watkins' Certificate of Public Convenience permitted carriage of goods only as far as Dallas, Texas, the company arranged with Zero to have the truck continue from Dallas to Tucson under Zero's name, pursuant to the standing interline agreement. This was accomplished through the fiction of an equipment lease by which Zero 'rented' the truck from Watkins for two days, receiving the fee for carrying the cookies from Dallas to Tucson but paying for the 'rental' to Watkins. Upon its arrival in Dallas, Zero inspected the equipment, changed the Watkins nameplate to Zero's own, and signed the appropriate papers covering the 'rental' of the equipment and drivers through to Tucson.
 
 
 4
 On February 28, 1972, a fatal traffic accident occurred in Tucson while the tractor trailer rig was being operated by Reynolds. As a result, a wrongful death action was filed against Watkins and Zero in Phoenix. It was later settled for $575,000 with the burden split by the respective insurance carriers as follows: $300,000 by Zero's and $275,000 by Watkins'. Subsequently Zero filed a suit in the U.S. District Court in the Eastern District of Pennsylvania seeking indemnity for the $300,000 which it paid. That action was transferred to Chicago and consolidated with a similar suit filed by Watkins against Zero which was then pending.
 
 
 5
 Watkins then filed a motion for summary judgment claiming that it was entitled to indemnity from Zero under the rule announced by this Circuit in Alford v. Major, 470 F.2d 132 (7th Cir. 1972). The district court found Alford inapposite because the earlier case involved trip lease agreements under 49 C.F.R. § 1057.4, while the present case dealt with an interchange of equipment under 49 C.F.R. § 1057.5. The district court therefore entered a judgment against Watkins on its motion for summary judgment and for Zero on its counterclaim. A summary judgment against Watkins was entered for $300,000 in favor of Zero's insurers, Bankers and Shippers Company of New York ($100,000) and Continental Casualty Company ($200,000).
 
 
 6
 After this appeal was filed but before it was argued, the Supreme Court granted a writ of certiorari in Transamerican Freight Lines v. Brada Miller Freight Systems, 420 U.S. 971, 95 S.Ct. 1389, 43 L.Ed.2d 650. In that case, this circuit cited Alford v. Major in issuing an unpublished order striking down an indemnity clause in a lease of a tractor-trailer whereby the lessor agreed to hold the lessee harmless for any negligence of the lessors or its agents and to indemnify the lessee from any claims arising out of any injury sustained through any negligence of lessor or its agents or employees. It is not insignificant that three other circuit courts have handed down decisions conflicting with Alford. See Jones Truck Lines, Inc. v. Ryder Truck Lines, Inc., 507 F.2d 100 (6th Cir. 1974); Carolina Freight Carriers Corp. v. Pitt County Transportation Co., 492 F.2d 243 (4th Cir. 1974); Allstate Insurance Co. v. Alterman Transport Lines, Inc., 465 F.2d 710 (5th Cir. 1972).
 
 
 7
 Although it might be the better part of valor to hold this case pending the Supreme Court's examination of the Alford rationale in Transamerican, we have concluded that Alford is inapposite here, regardless of what the Court may do. Alford as did Transmerican, Jones Truck Lines, Carolina Freight Carriers, and Allstate Insurance, dealt with a trip lease under 49 C.F.R. § 1057.4, not an equipment exchange under § 1057.5. This is significant because it is only within the former regulation that there exists the requirement of 'complete assumption of responsibility * * * by the lessee for the duration of said contract, lease or other arrangement.' 49 C.F.R. § 1057.4(a)(4).
 
 
 8
 When Watkins dealt with Zero, it was acting under § 1057.5, which has no provision comparable to § 1057.4(a)(4). The requirements for an equipment exchange under § 1057.5 appear to have been met, and we perceive no bar to the indemnification agreed upon by the parties. It is true that it was Zero's certificate under which the shipment was moving at the time of the accident, but, as we view it, Watkins retained control of the equipment and, quite logically, retained responsibility for its use. If there is a public policy argument in this case, it lies with Zero, for to release Watkins from liability might encourage recklessness in driving on the part of the actual operators of trucking equipment. Since highway safety is one of the paramount goals of the regulations involved, it follows that the indemnity agreement serves a useful purpose and must be upheld.
 
 
 9
 Affirmed.
 
 
 
 *
 Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation
 
 
 **
 Senior Judge Robert A. Grant, United States District Court for the Northern Division of Indiana, is sitting by designation