OCCIDENTAL FIRE & CASUALTY CO. OF NORTH CAROLINA, a North Carolina Corporation, Plaintiff-Appellant,

v.

INTERNATIONAL INSURANCE CO., an Illinois Corporation, Defendant-Appellee.

No. 85–2113.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1986.

Decided Oct. 31, 1986.

Fred A. Smith, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiff-appellant.

Daniel J. Kordik, Brown, James & Rabbitt, P.C., Belleville, Ill., for defendant-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and EVANS, District Judge.*

COFFEY, Circuit Judge.

The appellant, Occidental Fire and Casualty Company of North Carolina ("Occidental"), sued the appellee, International Insurance Company ("International") seeking a declaratory judgment that International's insurance policy provided primary coverage under a truck liability policy for a truck accident. The district court held that Occidental's policy provided primary coverage. Occidental appeals. We affirm.

---

* The Honorable Terence T. Evans, District Judge of the Eastern District of Wisconsin, is sitting by designation.

## I

On August 29, 1980, Broviak Trucking Company ("Broviak") leased a truck tractor and trailer to Beelman Trucking Company ("Beelman"). The lease provided that Broviak would provide Beelman with one of its employees to drive the leased truck. The lease specifically provided that pursuant to the Interstate Commerce Commission ("ICC") regulations, Beelman would "assume full common carrier responsibility ... for the operation of such vehicle." The lease also provided that Broviak would "indemnify Lessee against ... any loss or damage resulting from the negligence, incompetence or dishonesty of such driver(s)."

On September 25, 1980, while en route to pick up a load of coal at the Ziegler Coal Company in Illinois, Broviak's employee, John Hauk, was involved in an accident with a van driven by Ralph Stork who was fatally injured in the accident. Ralph Stork's wife brought a wrongful death action in Illinois state trial court against Broviak, its driver Hauk, Beelman, and Ziegler Coal Company. On March 9, 1983, the parties agreed to settle the action for $175,000. Occidental, the insurer for Broviak, agreed to pay one-third of the settlement or $43,366 and International, the insurer for Beelman, agreed to pay two-thirds of the settlement or $86,732.[1]

After the insurance companies and Stork's estate had settled the wrongful death claim, Occidental brought this declaratory judgment action in federal district court seeking a determination of whether International's policy or Occidental's policy provided primary coverage. The district court found that the indemnity agreement in the lease between Broviak and Beelman shifted the "ultimate legal obligation" to Broviak. The court held that since ultimate responsibility for the accident rested with Broviak, Occidental's policy provided primary coverage.

On appeal, Occidental raises the following issues: (1) whether the Illinois ICC endorsement contained in International's policy assigns primary coverage for the accident to International as a matter of law; and (2) if the ICC endorsement does not impose liability as a matter of law, whether primary coverage for the accident is imposed upon International by the express terms of its policy language.

## II

### ICC Regulations

The Interstate Commerce Commission regulations state that any trucking equipment lease shall provide that the lessee assume "complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. sec. 1057.12(d)(1). Pursuant to this regulation, the truck rental lease between Broviak and Beelman provided that Beelman, as lessee, would assume "complete responsibility ... for the operation of [the] vehicle." Further, International's policy contained an Illinois ICC endorsement stating that the company agreed to pay any final judgment rendered against the insured "resulting from the operation, maintenance or use of motor vehicles by virtue of a certificate of public convenience and necessity or permit issued to the insured by the Illinois Commerce Commission...." The ICC endorsement also stated that "no condition, provision, stipulation, or limitation contained in the policy ... shall relieve the company from liability hereunder or from the payment of any such final judgment...."

Occidental contends that since Beelman was an ICC authorized carrier and International's policy contained the ICC endorsement stating that it would pay for any liability incurred by its insured, Inter-

---

1. Occidental's maximum coverage was $250,000 for each person per accident and International's maximum coverage was $500,000 for each person per accident. Thus, the division of damages between the two insurance companies was based upon the one-third, two-third percentage of total coverage under each policy. Each insurance carrier also reserved the right to seek a determination ascertaining whether Occidental's or International's policy provided primary coverage for the accident.

national provided primary coverage for the accident as a matter of law. In support of its argument, Occidental cites several cases holding that the ICC endorsement imposes primary coverage for an accident on the lessee's insurance carrier as a matter of law. *See, e.g., Argonaut Insurance Co. v. National Indemnity Co.,* 435 F.2d 718 (10th Cir.1971); *Hagans v. Glens Falls Insurance Co.,* 465 F.2d 1249, 1252 (10th Cir.1972); *Allstate Insurance Co. v. General Fire & Casualty Co.,* 348 F.Supp. 682 (E.D.Pa.1972). These cases, however, predated the Supreme Court's decision in *Trans-American Freight Lines, Inc. v. Brada-Miller Freight Systems, Inc.,* 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), where the Supreme Court held that an indemnification agreement between the lessor and lessee shifting liability to the lessor did not contravene the ICC regulations providing that the lessee was ultimately responsible for the operation of the vehicle. The Supreme Court reasoned that as long as one of the responsible parties, the lessor or lessee, pays for the damages the public is protected and thus "[t]he mere presence of a clause such as the one here—that the lessor is to bear the burden of its own negligence—does not, in and of itself, offend the regulations so long as the lessee does not absolve itself from the duties to the public and to shippers imposed upon it by the Commission's regulations." *Id.* at 40, 96 S.Ct. at 235. Since the *Brada-Miller* decision, cases confronted with the issue of whether the ICC endorsement imposes liability on the lessee's insurance carrier have held that as long as the member of the public has been compensated for his or her loss, the ICC endorsement does not make the lessee's insurer primarily liable as a matter of law. *See, e.g., Carolina Casualty Insurance Co. v. Insurance Co. of North America,* 595 F.2d 128 (3d Cir.1979); *Carolina Casualty Ins. Co. v. Underwriters Insurance Co.,* 569 F.2d 304 (5th Cir. 1978). This circuit recently followed those cases in rejecting the contention that the ICC endorsement renders the lessee's insurance company primarily liable as a matter of law.

"The purpose of the federal statute and regulations is to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its trucking operations. However, once it is clear that there are sufficient funds available to safeguard the public, the inquiry changes: '[t]he pertinent question is whether the federal policy of assuring compensation for loss to the public prevents courts from examining the manner in which *private agreements or state laws would otherwise allocate the ultimate financial burden of the injury.'*"

*Travelers Insurance Company v. Transport Insurance Company,* 787 F.2d 1133, 1140 (7th Cir.1986) (quoting *Carolina Casualty Insurance Co. of North America,* 595 F.2d 128, 138 (3d Cir.1979) (emphasis added). Since there is no question that the member of the public who was injured in the accident has been duly compensated, we reject Occidental's argument that the ICC endorsement contained in the lease and in International's policy renders International primarily liable for coverage of the accident as a matter of law. Pursuant to our recent decision in *Travelers Insurance Company, supra,* we examine the contract language and the applicable state law governing liability to determine which insurance company provides primary coverage.

### The Policy Language

Occidental next contends that the language in the respective insurance contracts of Occidental and International clearly state that International is to provide primary coverage for the accident while Occidental is to provide excess coverage only. Occidental's policy states:

**"I.  COVERAGE A—BODILY INJURY LIABILITY—COVERAGE  B—PROPERTY DAMAGE LIABILITY:**

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages....

**III. PERSONS INSURED:** Each of the following is an **insured** under this insurance to the extent set forth below:

(a) the **named insured;**

$*$ $*$ $*$ $*$ $*$ $*$

(c) any other person while using an **owned automobile** or a **temporary substitute automobile** with the permission of the **named insured,** provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to **bodily injury** or **property damage** arising out of the loading or unloading thereof, such other person shall be an **insured** only if he is:

(1) a lessee or borrower of the **automobile,** or

(2) an employee of the **named insured** or of such lessee or borrower;"

Incorporated within this policy is an addendum to the insurance contract referred to as the "truckmen's endorsement" that provides:

"It is agreed that the insurance applies with respect to the **automobile** described herein [truck and trailer provided by Broviak] or designated in the policy as subject to this endorsement, subject to the following additional provisions:

$*$ $*$ $*$ $*$ $*$ $*$

(d) With respect to (1) any **automobile** of the commercial type while leased or loaned to any person or organization, other than the **named insured,** engaged in the business of transporting property by **automobile** for others, or (2) any hired **private passenger automobile,** or (3) any **non-owned automobile,** *the insurance under this endorsement shall be excess insurance over any other valid and collectible insurance,* whether primary, excess or contingent, available to the **insured.** Otherwise, the insurance under this endorsement is primary insurance."

Occidental asserts that since Broviak leased its truck to Beelman and the truck was "engaged in the business of transport-

ing property by automobile" for Beelman, the truckmen's endorsement specifically provides that Occidental's policy will provide excess coverage only. International's policy, on the other hand, states:

"A. **WE WILL PAY.**

1. **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto.**

$*$ $*$ $*$ $*$ $*$ $*$

D. **WHO IS INSURED.**

1. **You** are an **insured** for any covered **auto.**

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow ...

$*$ $*$ $*$ $*$ $*$ $*$

4. The owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** while the covered **auto:**

a. Is being used exclusively in **your** business, and

b. Is being used over a route or territory **you** are authorized to serve by public authority or on its way to that route at **your** request.

$*$ $*$ $*$ $*$ $*$ $*$

PART VII—CONDITIONS

B. **OTHER INSURANCE—PRIMARY AND EXCESS INSURANCE PROVISIONS.**

1. *This policy's liability coverage is primary for any covered* **auto** *while hired or borrowed by* **you** *and used exclusively in* **your** *business and over a route or territory, if any,* **you** *are authorized to serve by public authority.* This policy's liability coverage is excess over any other collectible insurance for any covered **auto** while hired or borrowed from **you** by another **trucker.**"

Occidental argues that since Beelman was using Broviak's truck in Beelman's busi-

ness, over a route Beelman was authorized by the ICC to serve, International's policy expressly provides that its coverage is primary.

The district court found that as a matter of law Occidental provided primary coverage since according to the terms of the lease agreement between Broviak and Beelman, Broviak agreed to indemnify Beelman for any damages caused by the negligence of Broviak's driver, and thus Occidental, as the insurer for Broviak, provided primary coverage. In rendering this ruling, the court stated:

"Plaintiff proposes that the responsibility to the public on the part of the defendant's insured, who was operating a leased vehicle as a common carrier under the authority of the Interstate Commerce Commission, cannot be shifted to the lessor of the vehicle by means of a contract of indemnity. This position was expressly rejected by the United States Supreme Court in *Trans-American Freight Lines, Inc. v. Brada-Miller Freight Systems, Inc.*, 423 U.S. 28 [96 S.Ct. 229, 46 L.Ed.2d 169] (1975). The court concluded that since ultimate legal responsibility to assume liability for damages resulting from the accident rested upon Broviak's insurer, 'it is clear that plaintiff, as insurer of the lessor of the vehicle, is most definitely the primary insurer in this case.' "

District court order at 4. Occidental argues that the *Brada-Miller* case relied upon by the district court is not applicable since the issue in *Brada-Miller* was whether an indemnity agreement between a lessor and lessee shifting liability from the lessee to the lessor contravened the ICC regulations that the lessee assume complete responsibility for the operation of the equipment during the term of the lease in contrast to this case which concerns the effect of the lease on primary coverage. Occidental correctly notes that while the Supreme Court approved of an indemnity agreement between the lessor and lessee

concerning the transfer of liability to the lessor, they failed to discuss the effect of an agreement of this nature on the contractual obligations of the lessee and lessor's insurance companies. Occidental argues that it cannot be bound by the lease agreement since the lease was not part of nor incorporated in either insurance contract and the Occidental policy excludes liability assumed by the insured under contract or agreement.[2]

■ Our review of the record reveals that Occidental's attorney failed to raise the argument that the lease agreement could not be considered as evidence shifting the primary responsibility for coverage to Occidental, and it is "axiomatic that arguments not raised [before the district court] ... are waived on appeal." *Libertyville Datsun Sales, Inc. v. Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir.1985). *See also United States v. Griffin*, 782 F.2d 1393, 1398 (7th Cir.1986); *Erff v. MarkHon Industries, Inc.*, 781 F.2d 613, 618 (7th Cir.1986). The date this case was scheduled to go to trial, November 5, 1984, Occidental filed a trial brief with the court arguing that the ICC regulations required that the lessee, Beelman, be held primarily responsible for the accident. In the alternative, Occidental argued that its insurance policy explicitly provided that Occidental's coverage for the accident was limited to excess coverage only while International's policy provided that International's coverage was primary. On November 5, 1984, the court entered a minute order stating that "cause called for civil non-jury trial. Def[endant] to respond to plaintiff's [trial brief] on or before 11–15–84. [Plaintiff's attorney] to reply on or before 11–20–84. The court will attempt to decide the issues on the briefs. If argument is needed attys [attorneys] will be notified." International filed its brief on November 15, 1984, arguing, in part, that the indemnification agreement between Broviak and Beelman shifted the responsibility for the accident to Broviak and thus Broviak's insurer, Occidental, provided primary coverage for the accident.

2. Occidental's policy states:
"EXCLUSIONS: This insurance does not apply:

(a) To liability assumed by the insured under any contract or agreement...."

The attorney for Occidental failed to file a response to this argument as required by the district court order of November 5, 1984, and subsequently the district court rendered its decision in June, 1985 finding that based upon the lease agreement between Beelman and Broviak, Occidental (Broviak's insurer) provided primary coverage for the accident. Occidental argues that the district court improperly relied on the lease agreement in determining that liability for the accident ultimately rested on Broviak, and thus its insurer, Occidental, was responsible for providing primary coverage for the accident. Because Occidental failed to properly raise this argument before the district court the argument is deemed waived and Occidental cannot raise it for the first time on appeal. *Libertyville Datsun, supra.*

Further, even if we would deem that Occidental did not waive the argument that the court improperly relied on the lease agreement in shifting liability to Occidental, our review of the district court's opinion reveals that the judge did not rely exclusively on the lease agreement between Broviak and Beelman in finding that Occidental provided primary coverage for the accident. The court also noted that its determination that Occidental provided primary coverage was "consistent with this court's ruling in *'Riddle v. Trans-Cold Express, Inc.,* 530 F.Supp. 186 (S.D.Ill.1982), as well as several other cases from other jurisdictions. *Auto-Owners (Mutual) Insurance Company v. Midwest Emery Freight Systems,* 470 F.Supp. 790 (E.D.Ill.1979); *Wheeler v. Ellison,* 124 Ill.App.3d 852, 79 Ill.Dec. 953, 464 N.E.2d 857 (2d Dist.1984).' " District court order at 3–4. In *Wheeler,* an Illinois Appellate Court determined that the lessor of a tractor trailer could not maintain a third-party action against the lessee for indemnity and contribution since its driver's negligence caused the accident. In citing the *Wheeler* decision, the district court implied that since Broviak's driver caused the accident, Broviak was liable for the damages and thus its insurance company, Occidental, provided the primary coverage.

■ Furthermore, the policy's exclusion of contractually assumed liabilities (quoted at n. 2 above) on which Occidental relies in arguing that the lease agreement between Broviak and Beelman does not bind it was clearly superseded by provision (d) of the "truckmen's endorsement" which provides insurance for "any automobile of the commercial type *while leased or loaned* to any person or organization ... engaged in the business of transporting property by automobile for others...." (Emphasis added). Occidental concedes that "[its] printed policy provisions were altered by the addition of a truckmen's endorsement. The provisions of an endorsement control the basic policy provisions in the policy." (Brief at 7). The truckmen's endorsement agreed to by Occidental and Broviak specifically contemplates that Broviak might lease the insured vehicle to another commercial enterprise. It is unbelievable that Occidental and Broviak did not contemplate insurance for liabilities created by and through the leasing arrangements contemplated by the "truckmen's endorsement." Section III(c)(2) of the insurance contract provides that "an employee of the named insured" is an "insured" for purposes of the insurance contract and when read together with the truckmen's endorsement, extends the coverage of the insurance contract to damages caused by employees loaned pursuant to a lease. Thus, reading the contract in its entirety, Occidental promised to "pay on behalf of [Broviak] all sums which [Broviak] shall become legally obligated to pay ... because of bodily injury ... arising out of the ... use [of the tractor]," (sec. I), including those sums arising out of use by "an employee of [Broviak]," (sec. III(c)(2)), "while leased ... to any person or organization ... engaged in the business of transporting property by automobile for others...." (Truckmen's endorsement, sec. (d)).

■ Since the language of the insurance contract imposes primary liability on Occidental, and Occidental, in failing to raise the issue in the district court, waived any

objection to considering its responsibilities under the insurance contract in light of the lease agreement between Beelman and Broviak, we refuse to hold that Occidental is not bound by the indemnity provision of the Broviak-Beelman lease. A holding of this nature would ignore the commercial realities of motor carrier service: demand for carrier service fluctuates and carriers adjust, borrowing or loaning equipment in order to maximize their resources in the face of changing demand. *See Brada-Miller*, 423 U.S. at 35, 96 S.Ct. at 233. A lease pursuant to which the lessor provides a driver to the lessee should be no surprise to Occidental because, for example, 49 C.F.R. sec. 1057.12(d), in delineating specific requirements for such leases, establishes that such leases are customary in the trucking industry. Similarly, an indemnity agreement was equally foreseeable to Occidental in which the lessor assumed liability for the negligent conduct of a lessor-provided driver. *See e.g., Brada-Miller Fr.*

*Sys.*, 423 U.S. at 36–41, 96 S.Ct. at·233–35 (1975) (focusing on indemnity agreements). Occidental's argument, in effect, is that Occidental and Broviak agreed to an insurance policy marred by huge gaps in coverage and protection from foreseeable liabilities created by the lease agreement that the language of the policy clearly contemplated. We refuse to adopt the dissent's theory that such an agrement be considered as a reasonable view of the parties' intent.[3]

In this case, both insurance policies provide that the insurance companies will pay the damages that the trucking companies became "legally" obligated to pay. The accident in this case was caused by Broviak's employee, Hauk.[4] Thus we must determine under Illinois law what effect the status of the·negligent driver had on the insurance companies' obligation under their respective insurance contracts.[5]

---

**3.** The dissent concludes "[Broviak] may not bind Occidental without Occidental's consent," and that "[a]n insurer's contractual obligations cannot ordinarily be altered by collateral agreements between its insured and third persons." Because Occidental's truckmen's endorsement explicitly extends insurance coverage to liabilities resulting from use of the designated tractor during the lease period (i.e., Occidental clearly agreed to insure Broviak against liabilities arising from a contemplated lease), there is no "alter[ation] by collateral agreement" of Occidental's contractual obligations. The dissent asserts that we quote selectively from the truckmen's endorsement but points to no language in that endorsement that conflicts with our interpretation of its language. We are at a loss to understand how the dissent can reasonably purport to construe Occidental's insurance contract according to the intentions of the parties without referring to the lease from which Occidental's liabilities under the truckmen's endorsement arose. In *Truck Ins. Exchange v. Liberty Mut. Ins. Co.*, 102 Ill.App.3d 24, 57 Ill.Dec. 503, 428 N.E.2d 1183, 1185 (1981), the court explained, "By its endorsements [the insurer] acknowledged that it was providing insurance pursuant to the lease. The respective policies, accompanying endorsements, and the lease so far as incorporated into the insurance contract, are construed together to determine the parties' intention." The truckman's endorsement in Occidental's policy contemplates that the insured might lease its trucks. We are convinced the indemnification clause contained in the lease agreement between Broviak and Beelman is not

inconsistent with the truckman's endorsement which itself extends Occidental's coverage to vehicles Broviak leases out. Under the terms of the policy, whether the coverage Occidental provides on vehicles leased out is primary or excess in this case depends on Broviak's liability for the accident. As we discuss *infra*, Occidental's insured (Broviak) is legally responsible under Illinois law for the negligence of its driver occurring in the scope of the driver's employment. Because Occidental's insured is ultimately liable for the accident its employee caused, the terms of Occidental's policy require Occidental to provide primary coverage.

**4.** The settlement agreement of the Stork's estate and Broviak and Beelman does not contain an admission of liability for the accident. However, the underlying assumption throughout this case has been that Broviak's employee was negligent and caused the accident. Specifically, the district court relied on the indemnification agreement providing that liability could be shifted based upon the negligence of Broviak's driver. Occidental did not challenge this assumption before the district court, nor does it challenge here on appeal International's characterization that Broviak's driver was negligent in causing the accident.

**5.** The dissent criticizes the majority for making this necessary inquiry into Hauk's status under Illinois law, arguing that "[w]hile the majority may be correct that liability on the part of the insured is in general a prerequisite to an insur-

Recently, the Illinois Supreme Court in *Heinrich v. Peabody International Corp.*, 99 Ill.2d 344, 76 Ill.Dec. 800, 459 N.E.2d 935 (1984) discussed the loaned-servant doctrine and its impact on the legal responsibilities of those parties responsible for the employee's actions. To understand the implications of this case, a detailed recitation of its facts is necessary. In *Heinrich,* the plaintiff's decedent brought a wrongful death action against San-Dee Corporation and its employee Ayala. The complaint alleged that at the time of the accident, Ayala, a janitor for San-Dee, was performing work at the Brookshire Corporation and that Ayala was negligent in the operation of a Brookshire trash compactor causing the death of the plaintiff's husband. San-Dee filed a third-party action against Brookshire for contribution and indemnity alleging that San-Dee had "loaned" Ayala to Brookshire and that Brookshire was responsible under the doctrine of *respondeat superior* for the negligence of Ayala. San-Dee further alleged that Brookshire owned and maintained the trash compactor and was negligent in failing to discover and warn of the unsafe conditions of the machine and was actually negligent. 76 Ill.Dec. at 802, 459 N.E.2d at 937. The trial court struck that portion of the third-party complaint requesting indemnity based on the loaned-servant doctrine ruling that San-Dee should have pled the loaned-servant doctrine as an affirmative defense to the original complaint rather than as a basis for indemnity in the third-party action against Brookshire. The trial court also dismissed the indemnity action

ruling that Illinois no longer recognized a cause of action for indemnity since the Illinois Supreme Court's decision in *Skinner v. Reed Prentice Division Package Machinery Co.*, 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1977), allowed a cause of action between joint tortfeasors based upon contribution. The Illinois Appellate Court dismissed San-Dee's appeal holding that the trial court's decision was not final since San-Dee's contribution claim was still valid and thus the appellate court did not have jurisdiction to address the validity of the indemnity action. *Heinrich,* 76 Ill.Dec. at 802, 459 N.E.2d at 937. The Illinois Supreme Court reversed the appellate court's determination that it did not have jurisdiction and remanded the case to the appellate court to determine if implied indemnity still existed in Illinois for an action based upon the active/passive negligence of the tortfeasors. *Id.* 76 Ill.Dec. at 804, 459 N.E.2d at 939. The court also addressed the issue of whether San-Dee, the defendant in a tort action, could invoke the "loaned-servant" doctrine in a third-party action seeking indemnity from Brookshire, rather than as a defense to liability in the original suit. *Id.* Brookshire argued that if "Ayala was acting as the agent of Brookshire at the time of the accident he would not have been acting as San-Dee's agent, and therefore San-Dee would not have been liable to the plaintiff and could not raise a claim for contribution." *Id.* The Illinois Supreme Court stated in response:

> "We agree that under the common law of this State indemnity could not operate

er's liability, the majority errs in making an independent determination of Beelman's liability pursuant to the loaned servant doctrine." The dissent misreads this opinion; we do not hold that an insured's liability is "in general" a prerequisite to an insurer's liability. On the contrary, we hold that liability of the insurers in this case is conditioned upon the specific language of Occidental's and International's contracts of insurance. Occidental promised to pay "all sums which the insured *shall become legally obligated to pay* . . . ." (Sec. I) (emphasis added). International promised to "pay all sums the insured *legally must pay* . . . ." (Sec. A.1) (emphasis added). The plain, clear and unequivocal language of the insurance contracts

requires us to determine as a threshold matter the legal obligations of Broviak and Beelman before we can resolve the question as to which insurer is obligated to provide primary coverage here. The dissent concludes that "International's and Occidental's policies ... are perfectly consistent with each other" only because the dissent evades the threshold question concerning whether Occidental's or International's insured is "legally obligated to pay" and proceeds to interpret the insurer's excess liability provisions on the assumption that both insurers are "legally obligated to pay." Thus, contrary to this assertion in the dissent, no issue of waiver is presented to preclude our inquiry into the liability of Broviak and Beelman.

unless the third-party claimant were found liable to the original plaintiff and compelled to pay a judgment. (see 21 Ill.L. & Prac. *Indemnity* sec. 43 (West 1977)). From this perspective it is imprecise to regard San-Dee's loaned-servant allegation as an indemnity claim *where it would have been a complete defense to its liability* had San-Dee raised it successfully in the original lawsuit. The loaned-servant doctrine is not basically a theory of indemnity, but rather expresses the maxim of agency law that an agent of one master may be loaned to another and become the servant of the second master rather than the first for the special purposes for which he is loaned. (See *Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill.App.3d 825, 832, 23 Ill.Dec. 215, 383 N.E.2d 1242, 53 Am.Jr.2d *Master and Servant* sec. 415 (1970); Restatement (Second) of Agency sec. 227 (1958)). The only parallel between this doctrine and the indemnity or contribution is that to the extent that a loaned servant is the agent of the second principal he is not the agent of the first." *Id.* (emphasis added). The Illinois Supreme Court noted, however, that while San-Dee's loaned-servant allegations in a third-party complaint are "logically confusing" it would allow the action to proceed since Brookshire was put on notice as to the nature of San-Dee's claim and that if in fact Ayala was a loaned employee, Brookshire would be the party completely responsible for the damages. *Id.*[6] Thus, under Illinois law, the employer who is actually responsible for the actions of a loaned employee is legally liable for such an employee's negligence. The loaned-servant doctrine is not a theory of liability based upon indemnity where one employer may be liable for the employee's actions but may

shift the payment of damages to the other employer; rather it is a complete defense to an assertion of liability. *Heinrich*, 76 Ill.Dec. at 804, 459 N.E.2d at 939–40.

In *Richard v. Illinois Bell Telephone Co.*, 66 Ill.App.3d 825, 23 Ill.Dec. 215, 383 N.E.2d 1242 (1978), a case cited with approval by the Illinois Supreme Court in *Heinrich*, the Illinois Appellate Court described the analysis for determining if a secondary employer may be liable under the loaned-employee doctrine:

"With regard to the loaned servant question, it is clear that an employee in the general employment of one master may, with his consent, be loaned to another and become the employee of the master to whom he is loaned. In such a case, the second employer, not the first, would be liable for the employee's negligence. (*Ellis v. Dannen Grain and Milling Co.* (7th Cir.1960), 275 F.2d 352; *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665; 53 Am.Jr.2d *Master and Servant* § 415 (1970). Whether an employee sent by his general employer to another for the performance of special work becomes a loaned servant is usually a question of fact. (*Gundich v. Emerson-Comstock Co.* (1960), 21 Ill.2d 117, 171 N.E.2d 60; *Merlo v. Public Service Co.*) However, *it is clear that an employee in the special service of a second employer cannot be considered a loaned servant unless he is wholly free from the control of the first employer and wholly subject to the control of the second employer.* (*Merlo v. Public Service Co.; Yankey v. Oscar Bohlin & Son, Inc.* (1962), 37 Ill.App.2d 457, 186 N.E.2d 57; *Murphy v. Lindahl* (1960), 24 Ill.App.2d 461, 165 N.E.2d 340.) *Further, it has been held that a person*

---

6. Justice Simon, the author of the opinion for the unanimous Illinois Supreme Court in *Heinrich*, further explained the *Heinrich* rationale in his dissent in *Van Slambrock v. Economy Bailer Co.*, 105 Ill.2d 462, 86 Ill.Dec. 488, 475 N.E.2d 867 (1985) (Simon, J. dissenting) where he stated:

"*Heinrich* held that a *loaned-servant allegation could not be the basis for an indemnity action*

*because the original defendant and third-party defendant were not both liable to the plaintiff.* The court's decision in that case, which was that the loaned-servant doctrine does not set an indemnity theory, dealt with a requirement different from the one at issue in this case." *Id.* at 473, 86 Ill.Dec. 488, 475 N.E.2d 867 (emphasis added).

*cannot become an employee of the second employer unless the second employer has the power to discharge or fire the employee.* (*Connolly v. People's Gas Light and Coke Co.* (1913), 260 Ill. 162, 102 N.E. 1057; *Pioneer Fireproof Construction Co. v. Hansen* (1898), 176 Ill. 100, 52 N.E. 17; *Robinson v. McDougal-Hartmann Co.* (1971), 133 Ill.App.2d 739, 272 N.E.2d 513; *Emma v. Norris* (1970), 130 Ill.App.2d 653, 264 N.E.2d 573.) And the fact that the employee obeys directions or signals given by the second employer in performing his special service does not make the employee a loaned servant. *Standard Oil Co. v. Anderson* (1909), 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; *Gundich v. Emerson-Comstock Co.; Yankey v. Oscar Bohlin & Son, Inc.*"

25 Ill.Dec. at 222–23, 383 N.E.2d at 1249–50 (emphasis added).

In this case, legal responsibility for the negligent actions of Broviak's driver, Hauk, would be attributable to Beelman only if Hauk were considered as a loaned employee. If he cannot be considered Beelman's employee, then, as between Beelman and Broviak, Beelman is not legally responsible for Hauk's actions, and if Beelman is not legally responsible then International,

7. The dissent argues that "on the issue of Beelman's *liability* the loaned servant doctrine must very likely yield to the Interstate Commerce Commission Regulations [and] [c]ertain provisions of the Interstate Commerce Act [which] demonstrate the understanding of Congress that lessee interstate carriers were to be liable for negligent operation of the motor vehicles that they used." In *Travelers Ins. Co. v. Transport Ins. Co.,* 787 F.2d 1133 (7th Cir.1986), this court wrote:

> "The purpose of the [ICC] statute and regulations is to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its trucking operations. However, once it is clear that there are sufficient funds available to safeguard the public, the inquiry changes: '[t]he pertinent question is whether the federal policy of assuring compensation for loss to the public prevents courts from examining the manner in which private agreements *or state laws* would otherwise allocate the ultimate financial burden of the injury."

*Travelers Ins. Co.,* 787 F.2d at 1140 (J. Cudahy) (emphasis in original), *quoting Carolina Cas.*

Beelman's insurer, would not be responsible for the damages caused as a result of the negligence of Broviak's employer.[7] *Cf. Watkins Motor Lines, Inc. v. Zero Refrigerated Lines,* 525 F.2d 538, 540 (7th Cir. 1976).

■ The lease agreement between Broviak and Beelman provided that the lessor Broviak:

"(b) Agrees that during the term of this agreement the Lessor shall fully maintain, service and keep the vehicle(s) above described in good repair, provide all gas, oil, tires and other equipment necessary *and pay driver(s) salary.*

(c) *Warrants (1) that driver(s) furnished with such motor vehicle(s) is (are) competent and qualified to operate said equipment, ...*

(d) Agrees that the Lessee shall not be liable for any loss or damage to or destruction of said leased vehicle(s) while it is being operated by or is in the care and control of *driver(s) furnished therewith.*

\*   \*   \*   \*   \*   \*

*The compensation to be paid by Lessee to the Lessor for the lease of the vehicle(s) described herein shall be the sum of 75% of gross revenue shall constitute full and complete payment by*

*Ins. Co. v. Ins. Co. of North America,* 595 F.2d 128, 138 (3d Cir.1979).

There are "sufficient funds available to safeguard the public" through the insurance policies of Occidental and International. In fact, the wife of Stork (the decedent in the wrongful death action brought against Broviak, Hauk, Beelman and the Ziegler Coal Co.) has already received a settlement of $175,000. We therefore reject as gratuitous the dissent's discussion of whether the loaned servant doctrine might be preempted by ICC regulations and the Interstate Commerce Act when "sufficient funds" are *not* "available" to the lessor who provides a negligent driver. *See Carolina Cas. Ins. Co., supra,* 595 F.2d at 138 n. 32 ("[A] court may give effect to otherwise existing allocations of financial responsibility where the goal of protecting the injured public has already been fulfilled...."); *Transamerican Fr. Lines,* 423 U.S. at 41, 96 S.Ct. at 235 (holding *lessor* liable for negligence may increase "operational safety" because "[t]he lessor, as a general rule, is the party more familiar with the equipment it leases *and with the experience, ability and record of the driver it furnishes.*" (Emphasis added).

*Lessee for all* equipment and materials supplied, maintenance and operating expense, *wages of driver(s), all taxes, insurance, including social security, workmen's compensation and withholding tax."*

(Emphasis added). While the determination of whether an employee is a loaned servant is ordinarily a question of fact, *Richard,* 23 Ill.Dec. at 215, 383 N.E.2d at 1242, we believe the lease agreement sufficiently identifies Hauk as Broviak's and not Beelman's employee and thus further inquiry into the issue of which party had legal responsibility for the actions of Hauk is unnecessary. As detailed above, Broviak was responsible for paying the driver of the truck,[8] and the fact that Broviak paid Hauk is evidence that the employee remained in its employment. *Mosley v. Northwestern Steel and Wire Co.,* 76 Ill. App.3d 710, 31 Ill.Dec. 853, 860, 394 N.E.2d 1230, 1237 (1979). Further, Broviak trained and provided the driver to operate the truck. Although the lease does not specify which party could discharge the driver, since Broviak selected, trained and paid the driver, it is likely that Broviak also had the power to discharge the driver if his performance was deficient and thus Hauk could not be considered Beelman's employee for purposes of assessing liability since

"it has been held that a person cannot become an employee of the second employer unless the second employer has the power to discharge or fire the employee." *Richard,* 23 Ill.Dec. at 222, 383 N.E.2d at 1249.[9] Also, even though the lease stated that the lessee was to have complete responsibility for the operation of the vehicle (in accord over the ICC's regulations), this does not establish that the lessee had complete control over the driver of the truck for purposes of determining which party, Beelman or Broviak, was the employer of the driver since, as noted above, Broviak hired, trained and paid the driver. This evidence clearly demonstrates that the driver was not "considered a loaned servant [as he was not] wholly free from the control of the first employer [Broviak] and wholly subject to the second employer [Beelman]." *Richard,* 23 Ill.Dec. at 222, 383 N.E.2d at 1249.[10] Further, the mere fact that an employee follows the directions of the second employer does not make that employee a loaned servant for purposes of establishing liability of the second employer. 215 Ill.Dec. at 222, 383 N.E.2d at 1249 (citing *Standard Oil Co. v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909)).[11] Since Hauk was Broviak's employee for purposes of assessing which party was responsible for the damages between Broviak

---

**8.** The lease provided that payment of 75% of the revenues generated by the lease agreement would "constitute full and complete payment;" and thus since the lease does not provide sufficient revenue to cover expenses, including the driver's salary, Broviak still would be responsible for the excess expenses, including the driver's salary.

**9.** Further, the lease was silent as to which party would have power to discharge the driver of the truck. However, one would think that if Broviak had the authority to select which driver was to operate the truck, it would also have the authority to replace that driver.

**10.** On remand of the *Heinrich* case, the Illinois appellate court noted that San-Dee had a cause of action for contribution against Brookshire based upon the relative degree of control that each employer exercised over the employee. *Heinrich v. Peabody Intern. Corp.,* 139 Ill.App.3d 289, 93 Ill.Dec. 544, 486 N.E.2d 1379, 1386 (1985). This reference to contribution, however, appears inconsistent with the Supreme Court's decision in *Heinrich* that the loaned-

servant doctrine is a complete defense to liability and the Illinois Supreme Court's cite to *Richard* as setting forth the appropriate analysis for reviewing a claim based upon the loaned-servant doctrine. We do not have to determine if the appellate court's decision in *Heinrich* is proper since we believe that Beelman, and thus International, should not have to contribute to the payment of damages as Beelman did not engage in any "culpable conduct which somehow contributed to" Stork's unfortunate death. *Wheeler v. Ellison,* 124 Ill.App.3d 852, 79 Ill.Dec. 953, 464 N.E.2d 857, 865 (1984).

**11.** The dissent caustically and cavalierly refers to our analysis of whether Hauk is a "loaned employee" under Illinois law as "speculative and ultimately inadequate." The very case on which the dissent relies in so asserting, *American Stevedores Co. v. Industrial Commission,* 408 Ill. 449, 97 N.E.2d 325 (1951), provides that "where the facts are not in dispute ... their effect may become a matter of law.... [Where] [t]he facts are not in dispute, ... the matter [is] open for the reviewing court to de-

and Beelman, Broviak's insurer, Occidental, is responsible for providing primary coverage for the accident.

The decision of the district court is AFFIRMED.

## CUDAHY, Circuit Judge, dissenting:

The case before us could hardly be simpler or more straightforward. International's and Occidental's policies are unambiguous and, somewhat surprisingly, perfectly consistent with each other.[1] Occidental's policy states that, on the present facts, it provides excess coverage.[2] International's policy states that, on these same facts, it provides primary coverage.[3] Insurers may thus by express contract allocate liability, and we need look no further than the insurance policies in this case.

termine whether or not, as a matter of law, the admitted facts disclosed a[n] [employment] relationship...." 97 N.E.2d at 327. The test for determining whether Hauk was a loaned employee of Beelman "is whether or not the employee becomes *wholly subject to the control and direction of the second employer and free from the control and direction of the original employer.*" *Mosley v. Northwestern Steel and Wire Co.*, 76 Ill.App.3d 710, 31 Ill.Dec. 853, 860, 394 N.E.2d 1230, 1237 (1979) (emphasis added). Unlike *Mosley*, where there was evidence in the record that the second employer had the power to discharge any worker, 31 Ill.Dec. at 861, 394 N.E.2d at 1238, here the record establishes that while Beelman had a lessee's right to use of a vehicle and driver, Broviak retained employment rights and obligations with respect to that driver, including the right to fix and adjust Hauk's pay, and the obligation to pay workmen's compensation. The lease did not authorize Beelman to discharge Hauk. Thus, the detailed provisions of the lease agreement which is part of the record provide a sufficient basis for determining whether Broviak retained liability for the negligence of Hauk occurring in the scope of Hauk's employment. Accordingly, we determine that Hauk was not "wholly subject to the control and direction of" Beelman (for purposes of Illinois law, not the ICC regulations), nor was Hauk "free from the control of" Broviak (again, for purposes of Illinois law, not the ICC regulations) because Broviak hired Hauk, trained Hauk, and retained the sole right to compensate Hauk as Broviak, not Beelman, saw fit.

1. International argues that Hauk, the truck driver, borrowed the truck from Beelman, the common carrier, and thus its policy provides only excess coverage. This argument is patently frivolous. *See* Defendant's Brief at 10.

2. Occidental's policy provides:
   With respect to (1) any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, or (2) any hired private passenger automobile, or (3) any non-owned automobile, the insurance under this endorsement shall be excess insurance over any other valid and collectible insurance, whether primary, excess or contingent, available to the insured. Otherwise, the insurance under this endorsement is primary insurance.

   Under this policy, Occidental's coverage would be primary on the present facts if International did not provide any "valid and collectible" insurance. International argues that because of the indemnity agreement, Beelman was never liable for the accident and hence International's policy was not collectible. *See* Defendant's Brief at 21–23. International, however, did provide valid, collectible insurance. The indemnity agreement does not relieve Beelman of liability to the victim of the accident; rather, it merely gives it a contractual right to seek reimbursement from Broviak. International may be subrogated to any rights Beelman has against Broviak under the indemnity agreement. See Defendant's Brief at 13–14. It does not follow, however, that, because International may seek reimbursement from Broviak under the indemnity agreement, it may also seek reimbursement from Occidental under the indemnity agreement.

   It might also be argued that International's policy is not "collectible," and thus Occidental's coverage is primary, because International's insured, Beelman, is not liable for the accident as a matter of tort law. Such an argument could follow from the majority's finding under Illinois' "loaned employee" doctrine that Broviak, and not Beelman, is legally responsible for the driver's actions. International, however, has never claimed that its insured is free of tort liability due to the loaned employee doctrine but instead relies solely on the indemnification agreement in its attempt to avoid liability. Even if the parties had raised the insured's underlying tort liability as an issue here, as is discussed below the loaned employee doctrine would not have relieved International of liability given the Interstate Commerce Commission regulations and the lease language pursuant to those regulations. *See infra* pp. 997–98. Finally, it is far from obvious that the existence of tort liability on the part of the insured would be required for its insurance to be considered "valid and collectible."

3. International's policy provides:
   This policy's liability coverage is primary for any covered auto while hired or borrowed by

I shall undertake, however, although I think it really unnecessary, to address the indemnification agreement that the district court thought pivotal and to follow the various threads of the majority opinion. In the first place, the indemnification agreement does not alter the responsibilities of the insurers as established in the policies.[4] Occidental was not a party to the indemnification agreement and Occidental's policy clearly states that it does not apply to "liability assumed by the insured under any contract or agreement."[5] In light of this clear policy language, although Broviak may enter into an indemnification agreement enforceable against himself, *see Transamerican Freight Lines, Inc. v. Brada-Miller Freight Systems, Inc.*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), he may not bind Occidental without Occidental's consent. Hence, as I have indicated, there is no reason for us to look beyond the language of the policies.

Even absent the Occidental policy provisions that disclaim coverage of liability contractually assumed by the insured, Broviak's agreement with Beelman could not alter Occidental's liabilities under the policy. An insurer's contractual obligations cannot ordinarily be altered by collateral agreements between its insured and third persons. *Carolina Casualty Insurance Co. v. Underwriters Insurance Co.*, 569 F.2d 304, 313 (5th Cir.1978). An insurer's liability is governed by its contract with the insured, and it cannot be held to anything beyond that contractual duty. *Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232, 235 (3d Cir.1976); *see Taylor v. Kinsella*, 742 F.2d 709, 711–12 (2d Cir. 1984) (insurer not liable for coverage agreed to by insureds in lease agreement when lease agreement not incorporated into the policy); *Occidental Fire & Casualty Co. v. Bankers & Shippers Insurance Co.*, 564 F.Supp. 1501, 1504 (W.D.Va.1983) (same); *Insurance Co. of North America v. Continental Casualty Co.*, 431 F.Supp. 316, 320 n. 8 (E.D.Penn.1977), *rev'd*, 575 F.2d 1070 (3d Cir.1978). Of course, had Occidental's policy explicitly provided coverage for liability contractually assumed by Broviak, then the provisions of the lease agreement would be relevant in determining whether the insurer was liable. *See Pennsylvania Manufacturers' Association Insurance Co. v. Lumbermens Mutu-*

---

you and used exclusively in your business and over a route or territory, if any, you are authorized to serve by public authority. This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker.

**4.** *See supra* footnote 2.

**5.** The majority argues that the policy's exclusion of contractually assumed liabilities is superseded by provision (d) of the "truckmen's endorsement." The truckmen's endorsement, from which the majority selectively quotes, provides *excess* insurance for automobiles while leased or loaned. The policy exclusion, on the other hand, provides that the insurance does not apply to liability assumed by the insured under any contract or agreement. Clearly, therefore, the truckmen's endorsement does not conflict with, much less supersede, the exclusion.

The fundamental flaw in the majority's reasoning is that it does not recognize the difference between liabilities created because an automobile is leased (for which excess insurance is provided by the truckmen's endorsement) and liability created by a particular provision in the lease agreement (which is excluded from coverage). They are not the same thing. Broviak could have leased his truck to Beelman without including an indemnification clause in the lease agreement. While Occidental contemplated providing excess insurance for liablity that resulted merely because Broviak leased an automobile to Beelman, it did not contemplate providing insurance for any liability that Broviak voluntarily assumed in a specific provision of the lease. The "foreseeability" of an indemnity agreement is irrelevant. An insurer is not obliged to cover all "foreseeable" risks, especially when those risks are within the control of the insured. The policy informed Broviak that it would not cover liability created by an indemnification agreement. Broviak should have refrained from agreeing to that clause in the lease, or sought other insurance to cover the risk that he voluntarily assumed. Broviak's actions, therefore, caused any "gap" in the coverage; the insurance policy was not inherently flawed, as the majority would lead us to believe. *Truck Ins. Exch. v. Liberty Mutual Ins. Co.*, 102 Ill. App.3d 24, 57 Ill.Dec. 503, 428 N.E.2d 1183 (1981), cited by the majority, is inapplicable here because Occidental's insurance contract does not incorporate the lease agreement.

*al Casualty Co.,* 648 F.2d 914 (3d Cir.1981). That, however, is very clearly not the case here.

In any event, the majority does not rely on the indemnification agreement but instead argues that Beelman had no underlying liability for the accident and, therefore, International cannot be liable under its insurance policy. This conclusion relies on arguments that are not before us and "facts" that have never been found. While the majority may be correct that liability on the part of the insured is, in general, a prerequisite to an insurer's liability, and that the insurance coverage in this case extends only to sums that the insured is legally obligated to pay (a condition that we assume is found commonly in all policies of this type), the majority errs in making an independent determination of Beelman's liability pursuant to the loaned servant doctrine.

The two insurers in this case jointly settled the underlying litigation without putting into question or deciding the liability of their respective insureds. The insurers reserved only the right to seek a determination of which policy provided *primary* coverage. This is totally different from the right to seek a determination that there was no risk for one of the policies to cover. Further, the parties did not raise, the district court did not address, nor has either party raised on appeal, the issue of Beelman's liability under the loaned servant doctrine.[6] Yet the majority has felt free to address this issue and to make the related factual determinations, all without finding out whether either party thought this issue existed. In addition, in pursuing a non-is-

sue, the majority has improperly found facts on appeal.

In this connection, the majority has decided that under Illinois law Hauk was not a loaned employee and therefore Beelman (and ultimately International) could not be responsible for his alleged negligence. I do not know if this is a correct interpretation of Illinois law (and we are without the facts to make such a determination here), but even if this interpretation were correct, on the issue of Beelman's *liability* the loaned servant doctrine must very likely yield to the Interstate Commerce Commission regulations and the lease language pursuant to the regulations.

The ICC regulations require:

The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 1057.12(c)(1).[7] Certain provisions in the Interstate Commerce Act also demonstrate the understanding of Congress that lessee interstate carriers were to be liable for negligent operation of the motor vehicles that they used. Thus all ICC-certified carriers are required to file with the ICC an insurance policy or other form of security "sufficient to pay ... for each final judgment against the carrier for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles under the certificate or permit." 49 U.S.C.

---

**6.** It is striking that the majority is willing to conclude that Occidental waived the argument that the court should not rely on the lease agreement to shift liability to Occidental, but closes its eyes to the much larger waiver issue here.

**7.** The regulations also prescribe an endorsement for motor carrier policies, providing that: "Within the limits of liability ... it is further understood and agreed that no condition, provision, stipulation, or limitation contained in this policy ... shall relieve the [insurance] Company from liability...." ICC Form B.M.C. 90; *see*

*Travelers Ins. Co. v. Transport Ins. Co.,* 787 F.2d 1133, 1139 (7th Cir.1986). In accordance with this prescription, International's insurance policy contained the following provision:

[I]t is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement, by the insured, shall relieve the company from liability hereunder or from the payment of any such final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured.

§ 10927(a)(1). Further, the Act requires "a motor carrier ... that uses motor vehicles not owned by it to transport property under an arrangement with another party to ... obtain liability and cargo insurance...." 49 U.S.C. § 11107(a)(3).

I agree with the majority that the ICC regulation and required lease language should not be controlling in this case on the issue of primary versus excess insurance coverage, *see* 787 F.2d at 1139–40, but these requirements of federal law are very likely controlling (and preemptive for that matter) as to any issue of Beelman's underlying liability for damages sustained in connection with the operation of its leased trucks.[8] Any other interpretation would relieve regulated over-the-road truckers of responsibility for improper operation of the trucks they use to carry freight over the public highways.[9] This is simply an unimaginable result—and one that the ICC sought to preclude by regulation.[10]

The majority's reliance on the requirements of the loaned servant doctrine necessarily implies a finding that the accident was caused by Hauk's negligence and that he was not a loaned servant while driving for Beelman. The majority is correct that Occidental did not challenge before the district court the assumption that Hauk was negligent nor does it challenge on appeal International's characterization of him as negligent. However, the issue of Hauk's negligence was not raised by the parties either before the district court or on appeal; hence, one can hardly take Occidental's failure to argue that Hauk was not negligent as a concession of his negligence. International's brief does in passing characterize Hauk as negligent, but International does not argue that he was negligent or that his being characterized as such has any importance. It is blatantly unfair to hold that a party has conceded a fact by failing to deny its truth when the fact was not in issue. It may be more than likely that Hauk was negligent, but it is not our role to make such factual findings. They are the business of the district court.

Similarly, as I have noted, the loaned servant issue has not been mentioned, let alone briefed, by the parties. Once again the majority intrudes upon the district court's factfinding role by determining that Hauk was not a loaned servant on the basis of a grossly inadequate record—without even the benefit of the parties' arguments. The majority's conclusion is based on speculation, not the record.[11]

The majority errs in concluding that the issue whether Hauk was a loaned servant may be decided, as a matter of law, solely on the basis of the lease agreement. The Illinois courts have held that the "essential criterion for determining the existence of a loaned servant relationship is that of control over the employee." *Holmes v. Saha-*

---

**8.** The language from *Travelers* quoted by the majority addresses the issue whether the ICC statute and regulations necessarily require the ICC carrier to assume primary liability. Although International is not primarily liable by virtue of the ICC regulations, we may still consider Beelman's assumption of "complete responsibility" for the operation of the leased truck when deciding whether it is liable under state (as impacted by federal) law.

**9.** The majority acknowledges that the Supreme Court and this circuit have allowed of shifting of primary liability from the lessee to the lessor only where "it is clear that there are sufficient funds available to safeguard the public." *Travelers,* 787 F.2d at 1140. *See supra* p. 986. Yet by focusing on the insureds' underlying tort liability, the majority's reasoning would release International from all liability under its policy even if Broviak possessed no insurance at all to compensate the public for injuries inflicted through the operation of the leased trucks.

**10.** I see no need to address the question whether the loaned servant doctrine might operate to exculpate the lessor in situations in which the doctrine's otherwise exculpatory impact on the lessee is preempted by federal law.

**11.** The majority rather lamely asserts that its analysis is not speculative because "the facts are not in dispute." The problem is that we do not have sufficient facts before us, disputed or undisputed, to determine whether Hauk is a loaned employee. Further, the facts that are before us are "undisputed" only in the sense that neither party has argued or briefed the loaned servant issue. The entire theory involving an alleged loaned servant is one of the majority's own concoction.

*ra Coal Co.*, 131 Ill.App.3d 666, 673, 86 Ill.Dec. 816, 821, 475 N.E.2d 1383, 1388 (1985); *see Gundich v. Emerson-Comstock Co.*, 21 Ill.2d 117, 123, 171 N.E.2d 60, 63 (1960); *Mosley v. Northwestern Steel & Wire Co.*, 76 Ill.App.3d 710, 719, 31 Ill.Dec. 853, 860, 394 N.E.2d 1230, 1237 (1979). The test is, as the majority notes, whether the employee becomes wholly subject to the control and direction of the second employer and free from the control of the original employer. *See, e.g., Gundich*, 21 Ill.2d at 123, 171 N.E.2d at 63; *Mosley*, 76 Ill.App.3d at 719, 31 Ill.Dec. at 860, 394 N.E.2d at 1237. In applying this test the factfinder should consider "various factors such as the manner of hiring, the mode of payment, the nature of the work, the manner of direction and supervision of the work and the right to discharge." *Mosley*, 76 Ill.App.3d at 719, 31 Ill.Dec. at 860, 394 N.E.2d at 1237 (citing cases); *see Gundich*, 21 Ill.2d at 123, 171 N.E.2d at 63.

The majority makes some attempt to analyze these factors, but its analysis is necessarily speculative and ultimately inadequate. For example, it is true, as the majority points out, that under the agreement Broviak was responsible for paying the driver of the truck, but the mode of payment is only one of the factors to be considered and is not by itself decisive. In *Mosley*, cited by the majority, the employee was held to have been loaned out even though he was paid by his original employer. *See American Stevedores Co. v. Industrial Commission*, 408 Ill. 449, 97 N.E.2d 325 (1951); *Highway Insurance Co. v. Sears Roebuck & Co.*, 92 Ill.App.2d 214, 235 N.E.2d 309 (1968).

The majority goes on to assert that "Broviak trained and provided the driver to operate the truck," without telling us why this is relevant to the question whether Hauk was loaned out. If Broviak had not provided the driver, the question whether Hauk was a loaned-out employee would never have arisen. And one might assume that the original employer will usually have trained the employee (to the extent the employee has any training). In any case neither of these are among the factors considered by the Illinois courts in deciding whether the loaned servant doctrine applies.[12]

The majority merely notes that, in accordance with ICC regulations, "the lease stated that the lessee was to have complete responsibility for the operation of the vehicle." In my view, the purpose of the regulations and the lease language is to preclude avoidance of liability by a motor carrier operating under ICC authority. In the face of the regulations and lease language, it is very questionable that the loaned servant doctrine could be relied on to defeat liability. If it could, and Beelman's underlying liability were really in issue (a position that I reject), the matter would have to be addressed by the district court on remand, and the requisite facts would have to be found.

As I have noted, it is both improper and unnecessary for us to determine Beelman's liability for Hauk's actions. Beelman's liability may be assumed for purposes of this proceeding. The insurance policies themselves are explicit and definitive as to which insurance is primary and which excess. The policies on their face, as well as established law, make clear that the indemnification agreement does not affect the coverage of the policies. Hence, the indemnification agreement need not be considered at all.[13] Instead, the explicit provi-

---

**12.** On another point, it is pure speculation that Broviak has the power to discharge the driver. It does not necessarily follow that because Broviak selected, trained and paid the driver, he also had the power to discharge the driver under the circumstances of this case. For example, in *Mosley* the original employer had selected, paid and presumably trained the employee, yet the second employer had the power to discharge. Similarly, in *Highway Insurance*, although Nu-

gents selected and paid the employees, Sears (the second employer) had the right to fire them. The employees were held to have been loaned out to Sears.

**13.** The majority, however, holds that Occidental waived any argument that the indemnification agreement could *not* be considered. The issue of the lease agreement was first raised in the defendant's trial brief. International argued that the lease agreement should be incorporated

sions of the policies providing that the International insurance is primary and the Occidental insurance is excess are controlling.

Thus, for all these reasons, I believe International is primarily liable and I respectfully dissent.

into the insurance policies. Apparently, Occidental never filed a reply brief and thus did not avail itself of the opportunity to argue against defendant's position. On appeal, however, International did not argue that Occidental had waived the right to make arguments concerning the lease agreement. A defense of waiver can itself be waived by not being raised. *See Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 565 (7th Cir.1986). However this may be, it is unthinkable that Occidental's failure to argue the issue at the trial level could compel us to accept International's obviously defective argument here.