**Dean HUBER, Plaintiff,**

v.

**Howard HENLEY, Carpet Center Leasing Company, Inc., Blue Ridge Mountain Contract Carriers, Inc., Trans American Trucking Service, Inc. National Starch and Chemical Corp., Defendants.**

**No. NA 86–112–C.**

United States District Court,
S.D. Indiana,
New Albany Division.

Aug. 18, 1987.

See also 656 F.Supp. 508.

Richard A. Bierly, Wyatt, Tarrant, Combs & Orbison, New Albany, Ind., for plaintiff.

David W. Crumbo, Donald L. Miller, II, Brown Todd & Heyburn, New Albany, Ind., for Henley, Carpet Center Leasing Co., Inc., Blue Ridge Mountain Contract Carriers, Inc.

Frank A. Nelson, George R. Carter, Boehl, Stopher, Graves & Deindoerfer, New Albany, Ind., for Nat. Starch and Chemical Corp.

Brent R. Weil, Kightlinger & Gray, Evansville, Ind., for Trans American Trucking Service, Inc.

**1476**

## ENTRY

BARKER, District Judge.

This matter is before the court on the following motions: (1) Defendant Trans American Trucking Service, Inc.'s ("Trans American") and defendant National Starch and Chemical Corporation's ("National Starch") motions for sanctions against the defendants Carpet Center Leasing Company, Inc. ("Carpet Center") and Blue Ridge Mountain Contract Carriers, Inc. ("Blue Ridge"), filed April 2, 1987; (2) plaintiff Dean L. Huber's motion for partial summary judgment as to nonparty defenses, filed May 8, 1987; (3) defendants Trans American's and National Starch's motions for summary judgment on the cross-claim for indemnification of defendants Henley, Carpet Center, and Blue Ridge, filed March 16, 1987, along with a motion for oral argument; and (4) defendant Blue Ridge's motion for partial summary judgment, filed May 8, 1987. The rulings on the motions and the reasons therefor are set out in the memorandum below.

### Memorandum

*Motions for sanctions*

█ The defendants Trans American and National Starch (the "moving defendants") have requested the court, pursuant to Fed. R.Civ.P. 37(b)(2), to impose sanctions upon the defendants Carpet Center and Blue Ridge, requesting specifically that the court strike all pleadings filed by Blue Ridge and Carpet Center and issue an order disallowing them from opposing any and all claims and defenses of the moving defendants.

The plaintiff's complaint for damages arose from a motor vehicle accident involving a tractor-trailer owned by defendant Carpet Center under written lease to defendant Blue Ridge and driven by Blue Ridge's employee, defendant Howard Henley. The tractor-trailer was under a trip lease to defendant Trans American for the purpose of hauling a load of industrial starch from the facilities of defendant National Starch in Indianapolis to a customer in Georgia. The accident occurred when the tractor-trailer overturned, causing dirt and debris to be hurled into the path of the car driven by the plaintiff Dean Huber. Huber's complaint alleges that he was injured when this dirt and debris shattered the windshield of his car. Huber has named Trans American, National Starch, Blue Ridge, Carpet Center, and Henley as defendants in this action.

In early August of 1986, defendant National Starch requested production of the tractor-trailer involved in the accident, directing the request to Carpet Center, its owner. In response, Carpet Center stated that the tractor-trailer was stored in Dalton, Georgia, in a damaged condition but objected to production as unduly burdensome. At that point, National Starch petitioned this court for an order to preserve the evidence. On September 2, 1986, this court entered an order directing that Carpet Center preserve the trailer in its existing condition and not repair, alter, restore, or destroy it absent further order of the court.

Carpet Center and Blue Ridge concede that their employees altered the trailer subsequent to the court's order to preserve it. However, they contend (and the moving defendants do not dispute) that the alteration or removal was inadvertent and not the result of willfulness or bad faith. They point out that their counsel sent a letter to the Blue Ridge/Carpet Center[1] employee in charge of supervising the litigation indicating that the trailer was not to be disturbed in any way. Communication of that direction was apparently faulty because Carpet Center personnel later removed the axle and suspension of the trailer and placed it on another trailer. Undisputedly, then, Carpet Center and/or Blue Ridge violated the court's order to preserve this evidence.

---

1. Blue Ridge and Carpet Center have responded to the motions for sanctions collectively and have referred to the person in charge of supervising the litigation as the employee of Blue Ridge and Carpet Center. The court will refer to the parties collectively in its discussion. Liability for any monetary sanctions imposed shall be joint and several.

National Starch and Trans American seek what may be characterized as an "ultimate" sanction. Practically speaking, disallowance of Blue Ridge and Carpet Center's defenses in this matter and the striking of their pleadings could be tantamount to a judgment of default against them. Under the circumstances of this case, the court finds that sanctions of this severity are not warranted. On the other hand, violation of the court's order, though it be negligent rather than intentional, cannot be overlooked.

Several factors in this case militate against the imposition of "ultimate" sanctions. First, Blue Ridge and Carpet Center have asserted, and the moving defendants do not dispute, that the alteration of evidence in this case was the product of inadvertence (or negligence) rather than willfulness or bad faith. Second, the axle and suspension removed from the trailer were not destroyed but were placed in use on another trailer. Blue Ridge and Carpet Center have agreed to make these parts available to National Starch and Trans American for inspection. Finally, the court senses that National Starch and Trans American have elevated the significance of this evidence to their defense beyond that expressed in the other papers filed in this lawsuit. In other words, National Starch and Trans American apparently did not consider the front axle and suspension of the trailer extremely crucial to their defense until they learned of this violation of the court's order.[2]

The answer brief of Blue Ridge and Carpet Center seems to suggest that because the violation of the court's order was not deliberate, it was not culpable. The discovery provisions of the federal rules require more, however, than the absence of intentional noncompliance; they impose an affirmative duty upon counsel and litigants to ensure compliance. The failure of compliance in this case was the direct result of negligence in the communication of instructions from counsel to the litigant's employees. The supervisory employee who received these instructions from counsel surely should have recognized the possibility that other employees might alter the vehicle unless clearly advised not to do so. Blue Ridge and Carpet Center should have had mechanisms in place to prevent the inadvertent alteration of evidence by their employees.

For these reasons, the court imposes the following sanctions, pursuant to Fed.R.Civ. P. 37(b)(2), on the defendants Blue Ridge and Carpet Center: Blue Ridge and Carpet Center shall reimburse National Starch and Trans American for all their costs and attorney fees related to the motion for production of the trailer, the motion to preserve the trailer, the trip of counsel and experts to Dalton, Georgia, in January of 1987 to inspect the trailer, the preparation of this request for sanctions, and any subsequent expert examination of the trailer or its parts that National Starch and/or Trans American undertakes. Trans American and National Starch shall provide Blue Ridge and Carpet Center, within fifteen (15) days of the date of this entry, an itemization of the costs and fees related to the matters listed above.[3] Additionally, the court imposes a sanction in the amount of one thousand dollars ($1,000.00), payable to the clerk of this court, for expenditure of the court's time related to the discovery request and the violation of the court's order.

*Plaintiff's motion for partial summary judgment*

By its entry of March 20, 1987, this court granted the defendant National Starch leave to amend its answer to assert a nonparty defense pursuant to Indiana's Com-

---

**2.** For example, National Starch did not assert this equipment factor in its original answer, filed June 19, 1986, its amended answer, filed March 30, 1987, or in its answers to the plaintiff's interrogatories. Likewise, Trans American did not raise the matter in its answer of November 7, 1986, or its amended answer of March 11, 1987. Neither party has sought to amend its answer further, and apparently, neither party has subsequently sought to inspect these removed parts.

**3.** Costs related to the expert examination of the trailer, if any, shall be itemized and submitted within a reasonable time following the examination.

parative Fault Act. Ind.Code §§ 34–4–33–1 to –14. Following the granting of that leave, National Starch asserted in its amended answer that

[T]he plaintiff's injuries resulted from the negligence of other defendants named herein and from the negligence of the state of Indiana and the Indiana Department of Highways in the design, construction, and maintenance of I–65, the median and shoulder of the roadway or highway at or near the site of the accident in question.

On March 11, 1987, Trans American had filed its answer to the amended complaint, asserting that "the non-party, Indiana Department of Highways, proximately contributed to the incident complained of in Plaintiff's Amended Complaint by its own contributory fault in failing to properly design, construct, and maintain the roadway and shoulder upon which the Defendant's vehicle traveled immediately prior to the accident...."

The plaintiff opposed National Starch's motion for leave to amend to assert the negligence of the state because the 180–day tort claims notice period had expired and the plaintiff was therefore precluded from making the state a party defendant. In determining that the state could be a nonparty as that term is defined in Ind. Code § 34–4–33–2(a), this court held: "Because the plaintiff had a right to recover against the Department of Highways and merely forfeited that right, the Department of Highways can be a nonparty in this case as one 'who is, or may be, liable to the claimant.'" Court's Entry of March 20, 1987, at p. 7.

The plaintiff has now filed a motion for partial summary judgment in which he contends that Indiana's ten-year statute of repose, Ind.Code § 34–4–20–2, would have barred any recovery by the plaintiff against the state of Indiana for the negligent design or construction of the highway in question. That statute provides:

No action to recover damages whether based upon contract, tort, nuisance, or otherwise, for:

(a) Any deficiency, or alleged deficiency, in the design, planning, supervision, construction, or observation of construction of an improvement to real property;
(b) An injury to property, either real or personal, arising out of any deficiency; or
(c) Injury to the person, or for wrongful death, arising out of any such deficiency;

shall be brought against any person who designs, plans, supervises, or observes the construction of, or constructs an improvement to real property, unless the action is commenced within the earlier of ten (10) years from the date of substantial completion of the improvement or twelve (12) years after the completion and submission of plans and specifications to the owner if the action is for deficiency in design.

Therefore, according to the language this court employed in its earlier entry, the plaintiff maintains that the state of Indiana and its Department of Highways was not "one against whom the plaintiff would have had a right to relief" for claims of negligent design or construction. Based on the statute and this court's earlier definition of "nonparty," the plaintiff argues that the state cannot be a nonparty to the extent the defendants' affirmative defenses are based on negligent design or construction and that the court should enter partial summary judgment accordingly and strike this defense from the answers of Trans American and National Starch.

The defendants oppose the plaintiff's motion on two grounds. First, they claim that an action against the state is not barred by application of Ind.Code § 34–4–20–2 by virtue of the limitation on the statute of repose stated in Ind.Code § 34–4–20–4. Second, the defendants argue that even if the statute of repose would have barred the plaintiff's action against the state, the state would nevertheless be a nonparty as that term is defined by section 2(a) of the Comparative Fault Act.

Ind.Code § 34–4–20–4 sets out the limitation on the statute of repose relied

upon by the plaintiff. That section provides:

> The limitation prescribed in this chapter shall not be asserted by way of defense by any person in actual possession or the control of real property, either as owner, tenant or otherwise, upon which an improvement has been made at the time any such deficiency in such improvement constitutes the proximate cause of the injury or wrongful death for which it is proposed to bring an action.

The unambiguous language of this section would seem to compel the conclusion that the state of Indiana, if it is actually the owner or in possession of the highway property in question, would not have been entitled to raise the statute of repose defense to an action for negligent design and construction. The defendants have cited statutory authority establishing that the state stands in the position of owner of the public roadways. Therefore, an action against the state Department of Highways for negligent design or construction would not have been barred by the statute of repose and the plaintiff would generally have had a right to relief.

In reply, the plaintiff is placed in the interesting position of arguing that the statute of repose, which was enacted generally for the purpose of protecting builders, architects, and contractors from claims occurring many years after completion of a project, should also apply to the state because "the legislature did not intend for the state to remain liable indefinitely" for alleged defects in design or construction of interstate highways. Although it is certainly plausible that the legislature did not anticipate or intend this result, the explicit language it enacted in section 34–4–20–4 provides that one who constructs or designs an improvement but thereafter retains control or possession of it is not entitled to the statute of repose defense. The plaintiff has provided no support for his suggestion that holding a defendant liable "merely because he has retained control of the improvement while allowing a similarly situated defendant who has not retained control of the improvement to escape liability," would be a violation of the constitutional guarantees of due process and equal protection," and, of course, there is none. For these reasons, the plaintiff's motion for partial summary judgment on this issue must be denied.

Although this first ground raised by the defendants precludes summary judgment for the plaintiff, the court deems it necessary to address the defendants' second ground in opposition to the motion. The defendants argue that even if an action against the state were barred by the statute of repose, the policies underlying the Comparative Fault Act as enunciated in this court's earlier entry would still compel the conclusion that the state could be a nonparty as defined by section 2(a) of the Act. The court cautions the defendants not to read its earlier holding so expansively. The entry of March 20, 1987, held that the state could be a nonparty because the plaintiff would have had a right to relief had the prescribed tort claims notice been properly given. However, the statute of repose, had it applied, would have barred the plaintiff's cause of action at the instant of its accrual. The state would not have been "a person who is, or may be, liable" to the plaintiff. The plaintiff would not have forfeited his right to recovery (as he did by not giving tort claims notice within 180 days); he simply would have had no right. Although the court does not believe that its earlier entry was in any measure ambiguous, the defendants' erroneous reading of it warrants comment.

For all of the foregoing reasons, the plaintiff's motion for partial summary judgment as to nonparty defenses is DENIED.

*Motions for summary judgment on cross-claims for indemnification*

Defendants Carpet Center, Blue Ridge, and Henley ("cross-claimants" for purposes of this motion) have filed cross-claims in this action against Trans American and National Starch, claiming that the latter parties were primarily negligent in causing the plaintiff's injuries and that Trans American and National Starch should therefore indemnify the cross-claimants for any judg-

ment rendered against them and for all costs and fees incurred by the cross-claimants in defending against the plaintiff's claim. Trans American and National Starch ("defendants" for purposes of this section of the court's entry) have filed motions for summary judgment, contending that they are entitled to judgment as a matter of law on these cross-claims.

Specifically, the defendants maintain that Indiana law, which governs this diversity action, provides no right of indemnity on the part of the cross-claimants. First, the defendants argue that there is no contractual right of indemnity. Second, they argue that the implied right of indemnity recognized under Indiana law does not encompass the circumstances of this case.

■ Generally, the right of indemnification arises under Indiana law only by contract, either express or implied. *Elcona Homes Corp. v. McMillan Bloedell, Ltd.,* 475 N.E.2d 713, 715 (Ind.Ct.App.1985) (citing *McClish v. Niagra Machine and Tool Works,* 266 F.Supp. 987 (S.D.Ind.1967)). The cross-claimants have not asserted a right to indemnification by the defendants arising out of any express contractual provision. They argue, however, that Indiana common law recognizes an implied right of indemnity against Trans American and National Starch because

> [t]he obligation to indemnify may grow out of an implied contractual relation or out of a liability imposed by law. Thus, a person who, without fault, has been compelled to pay damages because of the wrongful conduct of another primarily liable may recover from such other for expenditures properly made in the discharge of such liability.

15 I.L.E. *Indemnity* § 5 (1959). The cross-claimants go on to argue that none of them actually participated in any of the events causally connected to the plaintiff's injuries and that any active negligence was that of Trans American and/or National Starch. Therefore, the cross-claimants contend, if they are required to respond in damages to the plaintiff, their liability would result solely from the negligence of others.

At this point, it becomes necessary to theorize the possible bases for the plaintiff's recovery against the cross-claimants and to determine whether any of those bases would give rise to an implied right of indemnification under Indiana law.

First, a judgment against the cross-claimants could result from a finding of negligence on their parts proximately causing the plaintiff's injuries. Indeed, this seems to be the basis of the plaintiff's claims against Carpet Center, Blue Ridge, and Henley. For example, paragraph 15 of the plaintiff's amended complaint alleges that Henley was negligent "in one or more of the following ways":

(a) Defendant Henley knew, or should have known, that the trailer was improperly loaded so that its cargo might shift in transit, and nevertheless accepted the cargo as loaded.

(b) Defendant Henley failed to insist that the cargo be reloaded or properly restrained when he discovered that it was not properly loaded.

(c) Defendant Henley operated the tractor-trailer at a speed too great for conditions in light of the manner in which he observed that the cargo had been loaded.

(d) Defendant Henley failed to take necessary precautions or properly inspect the load after leaving the dock to determine whether any shifting occurred.

Paragraph 18 alleges that "[t]he negligence of the Defendant Henley is imputed to Defendant Blue Ridge and Defendant Carpet Center and said Defendants are vicariously liable to Plaintiff for the injuries and damages suffered as a proximate result of the acts and/or omissions of Henley." Furthermore, the plaintiff's contentions filed with the court assert independent negligence on the part of Blue Ridge in "failing to adequately train or instruct driver Henley regarding his duty to refuse acceptance of unsafely loaded cargo in interstate commerce. Blue Ridge was also negligent in permitting its driver to use a radar detection device." Finally, the plaintiff asserts the negligence of Carpet Center in failing to equip its trailer unit with any

means of cargo restraint. *See* Plaintiff's Contentions, filed February 17, 1987.

Indiana courts recognize a right of indemnification only in situations in which the indemnitor was not actually at fault but has been held liable to a third person on the basis of some relationship with the indemnitor. The right of indemnity does not arise if the party seeking indemnity could be considered a joint tortfeasor. *See* Wilkins, "The Indiana Comparative Fault Act at First (Lingering) Glance," 17 *Ind.L.Rev.* 687, 724 (1984) (citing cases). Furthermore, section seven of Indiana's Comparative Fault Act specifically states that the Act does not alter common law rights of indemnity. Ind.Code § 34–4–33–7. Section 2(b) of the Act evidences the fact that Indiana common law recognizes a right of indemnification only when liability has been imposed against the indemnitee on the basis of its vicarious or derivative liability for the acts of the indemnitor. Section 2(b) states that, for purposes of the attribution of fault under sections four and five of the Act, such defendants may be treated as a single party. Aside from this exception, section five of the Act allows for judgment only on the basis of actual fault. The most typical example of the implied right of indemnity, both under Indiana common law and the Comparative Fault Act, is the vicarious liability imposed on an employer for the negligence of an employee acting within the scope of her employment. In such a case, the employer would have a right of indemnity against the employee. *See, e.g., Holbrook v. Nolan,* 105 Ind.App. 75, 10 N.E.2d 744 (1937).

Consideration of the plaintiff's various allegations and contentions against the cross-claimants, in view of the applicable law on indemnification, reveals no basis for a right of indemnification because these allegations and contentions relate to independent negligence on the part of the cross-claimants. In other words, the apparent claims of the plaintiff against the cross-claimants would not result in the imposition of liability against them by virtue of the wrongful acts of Trans American or National Starch. The only derivative liability alleged is that of one cross-claimant,

Blue Ridge, for the negligence of another cross-claimant, Blue Ridge's employee Henley.

The cross-claimants attempt to avoid this conclusion by suggesting that Henley could be deemed to have been an employee of Trans American for purposes of the trip lease under pertinent regulations of the Interstate Commerce Commission or as a "borrowed servant" of Trans American. So, the argument goes, because Trans American controlled the transportation operation and directed the way Henley was to have the truck loaded, Trans American should indemnify Henley for any judgment rendered against him. The cross-claimants argue that Henley, as the "employee" of Trans American, has a right to be indemnified by Trans American because "where a servant performs an act not openly or apparently wrongful at the command of his master he has a right to indemnity from the master." *McClish v. Niagra Machine & Tool Works,* 266 F.Supp. 987 (S.D. Ind.1967) (citing *Holbrook v. Nolan,* 105 Ind.App. 75, 10 N.E.2d 744 (1937)).

Even assuming for the sake of argument that Henley was a borrowed servant of Trans American, the circumstances of this case could not lead to a right of indemnification in favor of Henley against his "employer" Trans American. Henley's own deposition testimony, as well as the general allegations of the cross-claims, negates any inference that Henley, in supervising the allegedly negligent loading of the trailer, was performing an act "not openly or apparently wrongful at the command of his master." Henley's testimony was, in fact, that he knew that the loading was not safe and objected to it because he knew he was responsible for the proper loading of the trailer. Moreover, to the extent that a finding of negligence against Henley is based on his operation of the vehicle, that negligence was not "at the command" of Trans American or National Starch. The cross-claimants' reliance on *Holbrook v. Nolan,* 105 Ind.App. 75, 10 N.E.2d 744 (1937), does not provide authority for the proposition that an employee has a right of indemnification from the employer where the employee has been held liable for his own negligent act. The *Holbrook* opinion,

which is admittedly confusing, merely states the general rule regarding respondeat superior liability as well as the converse of the rule. The court did not hold, however, that the employee whose alleged negligence in operating a vehicle while on the employer's business had a right to recover amounts for which she was held liable from her employer. Indeed, the employee in that case was not found liable. Rather, the court merely held that because the jury returned a verdict against only the employer and not its employee and the sole basis of the employer's liability was respondeat superior, the jury's verdict could not stand. Stated more simply, respondeat superior liability must be premised on the negligence of the employee. The *Holbrook* decision obviously lends no support to the cross-claimants' position.

■ Additionally, the cross-claimants' reliance for purposes of creating a right of indemnity on regulations of the Interstate Commerce Commission ("ICC") which may deem the driver to be an employee of the lessee carrier (here, Trans American) evidences a fundamental misapprehension of the applicable law. Although the ICC regulation at 49 C.F.R. § 1057.4 and the lease executed by the parties make the lessee (Trans American) fully responsible to the *public* for the operation of the tractor-trailer, they do not absolve the lessor of financial responsibility occasioned by its negligence. Indeed, this distinction was specifically addressed and explained in the decision upon which the cross-claimants rely, *Carolina Casualty Insurance Co. v. Insurance Co. of North America*, 595 F.2d 128 (3d Cir.1979). These cross-claims do not involve the liability of various defendants (Trans American, National Starch, and the cross-claimants) to the *plaintiff*; the cross-claims relate to the apportionment of ultimate financial responsibility as among all of the defendants. *See id.* at 137–38. Federal law has no effect on this apportionment. *See Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 40–41, 96 S.Ct. 229, 235, 46 L.Ed.2d 169 (1975). *See also Toomer v. United Resin Adhesives, Inc.*, 652 F.Supp. 219, 228–29 (N.D.Ill.1986), in which another district court in this circuit specifically held that the ICC regulations have no effect on the employee-employer relationship when apportionment of liability between the lessor and lessee is at issue.

In summary, no express contractual right of indemnity in favor of the cross-claimants can be demonstrated in this case and neither can the court find an implied right arising under Indiana law. If a judgment rendered against any or all of the cross-claimants is predicated on a finding of their own negligence, Indiana law recognizes no indemnity right. Furthermore, no relationship exists between the defendants and the cross-claimants that would result in the imposition of derivative or constructive liability on the cross-claimants for the negligence of Trans American and/or National Starch.

■ As a final matter, the cross-claimants argue that Indiana's primary coverage statute, Ind.Code § 27–8–9–9, requires Trans American to bear the ultimate financial responsibility for the plaintiff's claims. That statute provides:

> When a claim arises from the operation of a motor vehicle leased under a written lease agreement, if under the agreement the lessee agrees to provide coverage for damage resulting from his operation of the vehicle, then the motor vehicle liability insurance policy of the lessee is primary. No claim for damages may be made against any coverage available for the vehicle by the lessor until the limits of all coverage provided by the lessee for the vehicle are exhausted.

The court cannot ascertain whether the cross-claimants assert this statute as a basis for *their* right of indemnity or to argue that Trans American has no right of indemnity. In any event, this statute is inapplicable for the purposes of the defendants' summary judgment motion. First, the statute applies, by its own terms, only when the lessee has agreed in writing to provide insurance coverage for damage resulting from its operation of the vehicle. Not only did Trans American, as lessee, not so agree, but the contract between the parties specifies that the *lessor* (Blue Ridge) will carry "acceptable public liability and property damage insurance to reimburse and otherwise indemnify [Trans American] for

all ·losses resulting from the use of the equipment in question." Trans American's insurance policy is therefore not rendered the primary policy by operation of this statute. Second, the court can find no support for the viability of the cross-claims of Henley, Blue Ridge, and Carpet Center in *Travelers Insurance Co. v. Transport Insurance Co.*, 787 F.2d 1133 (7th Cir.1986). That decision addressed different issues based on different statutes than those pertinent here. The court in fact found the law of indemnity irrelevant to the question of primary coverage. *Id.* at 1140 n. 6. Finally, the Seventh Circuit Court of Appeals has even more recently rejected the cross-claimants' argument. In *Occidental Fire and Casualty Co. v. International Insurance Co.*, 804 F.2d 983, 985–86 (1986), the Seventh Circuit held that the lessee's status as an ICC authorized carrier with the statutorily-imposed responsibility to the public for the operation of the leased vehicle did not render the lessee's insurer primarily liable as a matter of law. For these reasons, Ind.Code § 27–8–9–9 provides no basis for a right of indemnity in favor of the cross-claimants.

There being no genuine issue of any fact material to the cross-claimants' right of indemnity against Trans American and National Starch, the motions for summary judgment of Trans American and National Starch on the cross-claims for indemnity of Henley, Blue Ridge, and Carpet Center are hereby GRANTED. Trans American's motion for oral argument on the motion is DENIED.

*Motion of Blue Ridge for partial summary judgment*

After raising the application of Ind.Code § 27–8–9–9 in opposition to the motion for summary judgment by Trans American on the cross-claims for indemnification filed by Blue Ridge, Carpet Center, and Henley, defendant Blue Ridge again has asserted the statute as the basis for its own motion for partial summary judgment on the claims asserted against it by the plaintiff and the cross-claim for indemnification asserted against it by Trans American.

Blue Ridge maintains that section 27–8–9–9 of the Indiana Code, which was set out fully in the previous section of this entry, bars the plaintiff's claim against Blue Ridge and Trans American's cross-claim for indemnification against Blue Ridge, therefore entitling Blue Ridge to judgment as a matter of law on these claims.

The court has already determined, in the previous section of this entry, that Ind. Code § 27–8–9–9 is inapplicable to the issues presented in this litigation. First, the statute by its terms refers to written agreements under which the lessee has agreed to provide insurance coverage. As noted above, Trans American, the lessee, did not so agree. Blue Ridge argues that because various federal statutes and regulations required that Trans American maintain acceptable insurance coverage, the law " 'existing at the time and place of the making of a contract enters into and forms a part of every contract....' " Blue Ridge Brief in Support of its Motion for Partial Summary Judgment, pp. 4–5 (quoting 6 I.L. E. *Contracts* § 131 (1958)). It should be clear by this point, however, that this contract doctrine has absolutely no application in this case. Courts addressing the significance of the federal statutes and regulations, most notably the United States Supreme Court in *Transamerican Freight Lines v. Brada Miller Freight Systems*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), have consistently pointed out that these federal laws do not prevent private parties from allocating by agreement or state law the ultimate financial burden for injuries to members of the public. In other words, federal law does require Trans American to carry certain liability insurance and to assume responsibility to the public for injuries resulting from the operation of the vehicle it leased. As a general matter, the federal law affects the responsibility of Trans American to the plaintiff Dean Huber; it does not dictate the terms of the contractual or common law relationships between Trans American and Blue Ridge. As noted in the previous section of this entry, the Seventh Circuit Court of Appeals has recently applied these principles in *Occidental Fire and Casualty Co. v. International Insurance Co.*, 804 F.2d 983 (1986), holding that ICC regulations

and contractual endorsements made pursuant thereto do not render the lessee's insurer primarily liable as a matter of law. *Id.* at 986 (applying Illinois law). *See also Carolina Casualty Insurance Co. v. Insurance Co. of North America,* 595 F.2d 128, 137–38 (3d Cir.1979). For this reason, an agreement by Trans American to carry insurance so as to make it the primary carrier under Ind.Code § 27–8–9–9 did not become a term of the contract between Trans American and Blue Ridge by operation of federal law.

This conclusion is also in accord with the Indiana Court of Appeals' decision *Rediehs Express, Inc. v. Maple,* 491 N.E.2d 1006 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987). The policy behind the ICC regulations, as articulated by that court, is that the plaintiff should not bear the burden of a financially irresponsible lessor. Therefore, the law fixes responsibility to the public on the lessee operating under an ICC permit. *Id.* at 1012. That policy does not prevent the lessee upon whom liability has been constructively imposed from seeking indemnification from the lessor; it merely shifts the burden of a financially irresponsible lessor from the injured member of the public to the lessee.

As an additional matter, Ind.Code § 27–8–9–9 has absolutely no effect on the plaintiff's claim against Blue Ridge based on respondeat superior (for the negligence of its employee Henley) and inadequate training. Even if the insurance policy of Trans American were primary under the provisions of the statute, the statute has no application in the underlying personal injury action by the plaintiff. Rather, it relates to claims made against insurance policies and governs apportionment of damages among various insurance policies when a resolution of the underlying case has been reached.

For these reasons, Blue Ridge's motion for partial summary judgment on the claims of the plaintiff and the cross-claims for indemnification of Trans American is DENIED.

In its memorandum in opposition to Blue Ridge's motion for partial summary judg-

ment, Trans American not only argued that Ind.Code § 27–8–9–9 is inapplicable, as this court has found, but also that its cross-claim is otherwise valid based on express contractual and implied rights of indemnification. Trans American appears by its argument to seek summary judgment on its cross-claims for indemnification in the absence of a proper motion and without proper factual and legal development. The court will not address these matters beyond the analysis already provided in the various sections of this entry because Trans American's argument is beyond the scope of the motion before the court.