Michael R. CONKLIN, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 64A03–9103–CR–69.

Court of Appeals of Indiana, Third District.

March 10, 1992.

Gary S. Germann, Chudom, Meyer & Germann, Portage, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Appellant-defendant Michael R. Conklin (Conklin) appeals his conviction for dealing cocaine, a Class B felony.

The evidence relevant to the appeal discloses that during the early morning of April 25, 1989, police officers in Porter County executed several arrest warrants involving illicit drug activities. Among those arrested was Kip Gillie (Gillie). After his arrest, Gillie volunteered to complete a drug sale with Conklin which had been pre-arranged for that afternoon.

According to the plan, Conklin would visit Gillie in the afternoon. Conklin would purchase approximately two grams of cocaine.

Prior to Conklin's arrival, Gillie was outfitted with a recording device, and two police officers hid in the bedroom. Upon his arrival at Gillie's apartment, Conklin received approximately two grams of cocaine and at the time consumed about one-third of that total amount. After a brief conversation between Gillie and Conklin, the officers, who were located approximately eight feet from the conversants, shouted "police." Conklin ran from the apartment, dropped the cocaine on the stairs, and was subdued by police officers.

Conklin was arrested and charged with dealing in cocaine, a Class B felony. After a trial by jury, Conklin was convicted of the charge. This appeal ensued.

Conklin raises two issues for review:

(1) Whether the trial court erred in allowing testimony into evidence regarding previous uncharged acts of dealing in cocaine; and

(2) Whether the conviction is supported by sufficient evidence.

■ It is without question that as a general proposition evidence of extrinsic criminal conduct is prejudicial and inadmissible. Here Gillie was permitted to testify that Conklin had in the distant past sold cocaine. This is a classic case of inadmissible prior criminal conduct. The evidence of past conduct adduced through the testimony of Gillie does not establish a common scheme or plan with regard to the offense here charged. At best it shows that two to three years previously, Conklin had sold cocaine. An inference is therefore invited to the effect that "once a cocaine dealer, always a cocaine dealer". The law is otherwise. *Street v. State* (1991) 5th Dist. Ind. App., 567 N.E.2d 1180, *trans. denied.*

■ Such evidence is inadmissible if, as here, it merely shows a tendency on the part of the defendant to commit certain types of crimes. *Manuel v. State* (1977) 267 Ind. 436, 370 N.E.2d 904. To be admissible under the theory propounded here, the evidence of Conklin's prior activity must be "so related in character, time and place of commission as to establish some plan which embraced both the prior ... criminal activity and the charged crime." *Malone v. State* (1982) Ind., 441 N.E.2d 1339, 1347.

■ No connection was established between Conklin's past conduct and the cocaine possession here involved. To the contrary, the quantity involved, two grams, one-third of which was consumed by Conklin at the time, strongly indicates personal use. It does not suggest an intent to distribute the remaining quantity to others. *See Isom v. State*, No. 18A02–9108–CR–365 (March 3, 1992) 2d Dist. Ind.App., —— N.E.2d ——. The evidence of past conduct here was too remote in time, place and circumstance to constitute a common scheme or plan. *Clark v. State* (1989) Ind., 536 N.E.2d 493; *Riley v. State* (1986) Ind., 489 N.E.2d 58.

■ Nevertheless, there is evidence that Conklin did have the requisite intent to deliver. According to Gillie, Conklin indicated after using a portion of the cocaine, that "he had to go, he had to go deliver it to somebody, some people at work...."

Record at 297. However, this evidence is not so overwhelming as to permit us to conclude that the inadmissible evidence of prior conduct did not contribute to the jury verdict. We are therefore unable to affirm the dealing conviction.

■ Rather than reverse and remand for a new trial, however, we reverse and remand with instructions to enter a conviction for the necessarily lesser included offense of possession of cocaine as a Class D felony, pursuant to I.C. 35–48–4–6. *See Isom v. State, supra.*

STATON, J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. Implicit in Conklin's defense was an admission that he possessed cocaine but that the evidence did not demonstrate that he intended to deliver the cocaine. Instead, Conklin attempted to demonstrate that he purchased the cocaine for his own personal use. The State then presented evidence to refute Conklin's defense through evidence that Conklin was purchasing the cocaine to deliver to co-workers and through evidence of Conklin's pattern for dealing in cocaine.

As noted by the majority, generally evidence of extrinsic criminal activity is prejudicial and inadmissible. However, evidence of unrelated criminal conduct by a defendant may be admissible to prove an accused's identification, knowledge, intent or motive, or to demonstrate a common plan or scheme of criminal activity from which the accused originated the charged crime. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, 711, *reh. den., cert. den.* 494 U.S. 1031, 110 S.Ct. 1481, 108 L.Ed.2d 617. In *Sharp, supra,* evidence of uncharged acts was admissible to demonstrate the defendant's intent and motive to sell drugs and his common scheme of criminal activity.

*Id.* at 711–12;

*cf. Collins v. State* (1988), Ind., 520 N.E.2d 1258, 1260–61 (evidence of pre-

vious drug use admitted to refute defenses of entrapment and immunity). Such is the case here.

The testimony was relevant to intent and motive and was invited by Conklin in order for the State to rebut his sole defense that the cocaine was purchased for his own consumption. Also, because the evidence of uncharged acts of selling was connected to Gillie, a nexus exists between Conklin's past conduct and that giving rise to the present action.

Conklin asserts that the evidence demonstrates that he was a user of cocaine and that he consumed some cocaine in the presence of Gillie. The evidence of Conklin's use of cocaine does not preclude an intent to deliver as well. The evidence demonstrated that Conklin purchased the cocaine, in part, with an intent to deliver it to his coworkers. Accordingly, because the jury's verdict is supported by sufficient evidence, the judgment of conviction should be affirmed.

PAFCO GENERAL INSURANCE COMPANY, Appellant–Defendant,

and

Douglas Baker, Appellant–Plaintiff,

v.

PROVIDENCE WASHINGTON INSURANCE COMPANY and Estate of Bradley Crum, Appellees–Defendants.

No. 41A01–9108–CV–261.

Court of Appeals of Indiana,
First District.

March 10, 1992.

Lessee of automobile brought action against his insurer and lessor's insurer. The Circuit Court, Johnson County, Jeffrey C. Eggers, J., entered judgment in favor of lessor's insurer, and lessee's insurer appealed. The Court of Appeals, Ratliff, C.J., held that; (1) purported waiver of uninsured motorist coverage in lease contract was ineffective; (2) lessee's insurer was primary insurer; and (3) other insurance clause in lessee's policy was valid.

Affirmed in part, reversed in part, and remanded.

**1. Insurance ⊜531.3(2)**

"Other insurance" clauses limit coverage when coverage under another policy is concurrently available so as to preclude double recovery of uninsured motorist coverages.

> See publication Words and Phrases for other judicial constructions and definitions.

**2. Insurance ⊜130.5(4)**

Automobile rental agreement which provided that the lessor and lessee rejected uninsured motorist and supplemental no-fault optional coverage to the extent permitted by law did not satisfy statutory requirements to effect a valid rejection of uninsured motorist insurance; lessee was only the insured and not the named insured on the policy and thus could not reject coverage, alleged rejection was not given to the insurer in writing because the rental agreement was not provided to the insurer, any rejection by the lessee was not voluntary as the contract was printed form which forced waiver of the insurance on the lessee, and lessee's statement that he had insurance was not a rejection of coverage by lessor's insurer. West's A.I.C. 27–7–5–2.

**3. Insurance ⊜139**

Automobile rental contract under which lessor agreed to provide liability insurance secondary to any insurance which the lessee might have through his policy, but simultaneously denied any uninsured motorist coverage, was contrary to public policy. West's A.I.C. 27–7–5–2.

**4. Insurance ⊕130.5(4)**

Because attempted forced rejection of uninsured motorist coverage in automobile rental contract violated public policy and was contrary to the uninsured motorist statute, no valid rejection occurred within the terms of the rental agreement, which provided that the rejection was to the extent permitted by law.

**5. Insurance ⊕531.3(2)**

Statute providing that lessee's liability policy is primary if lessee agrees in written lease to provide coverage for damages resulting from operation of leased vehicle applies to uninsured motorist coverage. West's A.I.C. 27-8-9-9.

**6. Insurance ⊕531.3(4)**

Lessee of automobile agreed to have his insurance be primary by consenting to provision in rental contract that lessor would provide automobile liability policy for the benefit of lessee and that that insurance would be excess insurance over any other liability insurance coverage available to lessee. West's A.I.C. 27-8-9-9.

**7. Insurance ⊕531.3(2)**

Where lessee's automobile policy was primary policy and contained "other insurance" clause and limited coverage to $25,000, and where lessor provided insurance in the amount of $60,000, lessee was entitled to recover the $25,000 in uninsured motorist benefits from his insurer and an additional $35,000 from the lessor's insurer. West's A.I.C. 27-7-5-5.

---

John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for Pafco Gen. Ins. Co.

Betsy K. Greene, Nunn, Kelley & Greene, Bloomington, for Douglas Baker.

Daniel W. Glavin and Larry L. Chubb, Beckman, Kelly & Smith, Hammond, for Providence Washington Ins. Co.

## STATEMENT OF THE CASE

RATLIFF, Chief Judge.

Pafco General Insurance Co. ("Pafco") and Douglas Baker appeal the entry of summary judgment in favor of Providence Washington Insurance Co. ("Providence") in an action for uninsured motorists benefits.[1] We affirm in part, reverse in part, and remand.

## ISSUES

We restate the issues as:

1. Did Baker make a valid rejection of Providence's uninsured motorist coverage?

2. Is IND.CODE § 27–8–9–9 applicable, making Pafco the primary insurer?

3. Did the trial court err in determining that Baker was not entitled to excess coverage by Providence?

## FACTS

[1] On October 12, 1988, Baker leased an automobile from Ugly Duckling Rent a Car ("Ugly Duckling"). Ugly Duckling had a commercial insurance policy with Providence covering its leased cars. The Providence policy provided $60,000 uninsured motorist coverage. Baker signed a rental agreement with Ugly Duckling, in which he represented that he had full insurance with "Wankier", an agent for Pafco. Baker's insurance policy with Pafco provided $25,000 uninsured motorist coverage. The Providence and Pafco policies both contained "other insurance" clauses.[2]

On October 13, 1988, Bradley Crum, an uninsured motorist, collided with Baker who was driving the leased car. Baker

---

1. Baker adopts the arguments made by Pafco and makes one additional contention of which we summarily dispose. Baker argues that Providence does not have standing to assert the validity of the rental agreement between Ugly Duckling and Baker. *See Nahmias Realty Insurance Co. v. Cohen* (1985), Ind.App., 484 N.E.2d 617, 623 (one not a party to a contract has no standing to enforce it). This case deals with more than the enforcement of the rental con-

tract. Providence is litigating its responsibility as to insurance coverage and is not asserting any rights under the rental contract. Baker's contention is without merit.

2. "Other insurance" clauses limit coverage when coverage under another policy is concurrently available so as to preclude stacking or double recovery of uninsured motorists coverages.

instituted a declaratory judgment action against Crum's estate and both insurance companies to discern to which uninsured motorists benefits he was entitled. Pafco and Providence requested summary judgment. After a hearing, the trial court denied Pafco's motion for summary judgment and granted Providence's motion, stating that Baker was not entitled to coverage by Providence and that the maximum coverage available to Baker under Pafco's policy was $25,000. Pafco and Baker appeal.

## DISCUSSION AND DECISION

Pafco is appealing the denial of summary judgment. We review the propriety of the trial court's judgment by applying the same standard of review. *Vanderburgh County v. Lee West* (1991), Ind.App., 564 N.E.2d 966, 967, *trans. denied.* Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). Although the entry of findings of fact are inappropriate in summary judgment proceedings, the court's reasons for entering summary judgment are helpful to our review and permit the appellant an opportunity to address the merits of the court's rationale. *Celina Mutual Insurance Co. v. Forister* (1982), Ind.App., 438 N.E.2d 1007, 1012.

*Issue One*

Pafco's first contention is that Baker did not make a valid rejection of Providence's uninsured motorist coverage; and therefore, Providence's insurance covered Baker. The trial court found that Baker executed a rental contract in which he chose voluntarily to reject personal accident insurance coverage by initialling a box and listing the name of his insurance company. The court also cited the language of the rental contract as evidence of Baker's rejection of Providence's insurance. Paragraph 5 of the rental agreement states:

"Vehicle Insurance. Lessor shall provide an automobile liability insurance policy for the benefit of Lessee with limits of coverage equal to or in excess of statutory requirements for public liability and property damage. Such insurance shall be excess insurance over any other liability insurance coverage available to Lessee, applicable after coverage under such other available insurance. To the extent permitted by law, said insurance DOES NOT provide coverage to Lessee for ... damages caused to any person by any uninsured motor vehicle.... *Lessor and Customer reject uninsured motorist and supplemental no fault and optional coverage to the extent permitted by law.*"

Record at 273A (emphasis added). The trial court found that the highlighted language constituted sufficient rejection of Providence's insurance by Baker. We agree with Pafco's argument that the rental contract does not satisfy statutory requirements to effect a valid rejection of uninsured motorist insurance.

IND.CODE § 27–7–5–2 requires the insurer to make uninsured motorist coverage available in each automobile liability insurance policy. Subsection (b) of this provision permits the named insured to reject uninsured motorist coverage in writing. As Providence was the insurer of Ugly Duckling's vehicles, it was required to offer uninsured motorist coverage in its policy, which it did. Under I.C. § 27–7–5–2, Ugly Duckling could reject the coverage in writing, but it never did. Because Baker was only an insured and not the named insured on the Providence policy, Baker could not reject the coverage. *See* I.C. § 27–7–5–2.

Even if Baker could have made a valid rejection of Providence's uninsured motorist coverage, we disagree with the trial court's characterization of the rental contract. The alleged rejection was not given to Providence in writing. The rental agreement between Ugly Duckling and Baker was not delivered to Providence to inform them of rejection. *See Indiana Lumbermens Mutual Insurance Co. v. Vincel* (1983), Ind.App., 452 N.E.2d 418, 421, n. 1, *trans. denied* (court questioned whether an exclusion in policy was sufficient to meet the requisite express rejection of coverage by the insured mandated in the statute).

Additionally, the fact that Baker indicated that he had full insurance did not constitute a rejection of uninsured motorist coverage by Providence. After reviewing the rental contract, we find that Baker's statement that he had insurance was merely a statement of fact and not a rejection of Providence's coverage. Moreover, any rejection by Baker was not voluntary. The rental contract was a printed form which forced waiver of the Providence coverage upon Baker. Such forced rejection is contrary to the express language of I.C. § 27–7–5–2, which places the option of rejection of uninsured motorist coverage upon the named insured. Therefore, any forced rejection of such coverage is void. *See Vernon Fire & Casualty Insurance Co. v. American Underwriters, Inc.* (1976), 171 Ind.App. 309, 314, 356 N.E.2d 693, 695 (any provision in derogation of the uninsured motorist statute will not be approved by this court); *see also Indiana Farmers Mutual Insurance Co. v. Speer* (1980), Ind. App., 407 N.E.2d 255, 259, *trans. denied* (once a person is deemed an insured under the liability portion of a policy, subsequent attempts to exclude insureds from uninsured motorist coverage will be unsuccessful); *accord Ashline v. Simon* (1985), La. App., 466 So.2d 622, 625, *rev. denied*, 472 So.2d 28 (mandatory rejection in rental agreement violates public policy in uninsured motorist statute).

■ The uninsured motorist statute applies to every automobile insurance policy and is incorporated therein. *Vernon Fire*, 356 N.E.2d at 695. Paragraph 5 of the rental contract is an attempt to limit the amount of protection available to Baker. Ugly Duckling agreed to provide liability insurance secondary to any insurance Baker may have through his own policy, but simultaneously denied any uninsured motorist coverage. Such dilution of coverage is contrary to public policy. *See Peterson v. Universal Fire and Casualty Insurance Co.* (1991), Ind.App., 572 N.E.2d 1309, 1312 (any language in an insurance contract which dilutes or diminishes the protection required by the uninsured motorist statute is contrary to public policy). The uninsured motorist statute links uninsured motorist coverage to liability coverage to reward those who obtain insurance coverage for the benefit of those who they might injure. *Anderson v. State Farm Mutual Automobile Insurance Co.* (1984), Ind.App., 471 N.E.2d 1170, 1175. We acknowledge Providence's argument that the limitation on uninsured motorist coverage was not made in an insurance policy and therefore the statute was not violated. In fact, the trial court found that I.C. § 27–7–5–2 does not encompass lease agreements for rental cars. We believe such distinction is untenable because it would defeat the purpose of the statute. In light of the express legislative intent, we disagree with the trial court and with Providence's assertion that uninsured motorist coverage could be modified and limited under contract law by the manner attempted here.

■ In addition, the rental contract expressly rejected uninsured motorist coverage "to the extent permitted by law." As discussed above, the attempted forced rejection violated public policy and was contrary to the uninsured motorist statute. Thus, no valid rejection occurred even within the terms of the rental contract.

*Issue Two*

■ Upon determining that Providence's coverage was not rejected, we consider the arguments regarding primary and excess coverage. I.C. § 27–8–9–9 concerns primary motor vehicle liability insurance coverage of leased vehicles. If a lessee agrees in a written lease agreement to provide coverage for damage resulting from his operation of the leased vehicle, then the lessee's liability insurance policy is primary. I.C. § 27–8–9–9(a). No claim for damages can be made against lessor's insurance policy until the limits of all the lessee's coverage is exhausted. *Id.* The trial court found this section applicable and determined that Pafco's insurance was primary.

Pafco argues that I.C. § 27–8–9–9 applies only to liability coverage, not to uninsured motorist coverage. The trial court referred to IND.CODE § 27–7–6–2 for the definition

of "automobile liability coverage". I.C. § 27–7–6–2 defines "automobile insurance coverage" as including coverage only for bodily injury and property damage liability, medical payments, and uninsured motorists coverage. Pafco contends that it was improper to rely upon the I.C. § 27–7–6–2 definition because it is in a different act with a different purpose. I.C. § 27–8–9–9 sets statutory priorities where concurrent policies exist. Pafco cites *Vincel*, 452 N.E.2d at 421–22, in which the court held that I.C. § 27–7–6–2 regulates cancellations and nonrenewal of insurance policies and its definition of "insured" was irrelevant to determining the class of persons included in "insured" in I.C. § 27–7–5–1. The *Vincel* court's reasoning was that I.C. § 27–7–6–2 did not define "insured", but merely provided that for cancellation purposes, automobile insurance policies are those providing coverage for natural persons and their relatives. *Id.* at 422. Distinguishing *Vincel*, we find that I.C. § 27–7–6–2 expressly defines "automobile liability coverage", unlike "insured", and is relevant to I.C. § 27–8–9–9. Utilizing the I.C. § 27–7–6–2 definition, we find that I.C. § 27–8–9–9 governs liability coverage, which includes uninsured motorist coverage. This determination is consistent with Indiana law that the uninsured motorist statute applies to every automobile insurance policy and is incorporated therein. *Vernon Fire*, 356 N.E.2d at 695.

■ Pafco next contends that even if I.C. § 27–8–9–9 includes uninsured motorist coverage, I.C. § 27–8–9–9 was still inapplicable because Baker did not agree to provide insurance. By its own terms, I.C. § 27–8–9–9 applies only if the lessee agrees to provide insurance. *See Huber v. Henley* (S.D.Ind.1987), 669 F.Supp. 1474, 1482 (lessee must agree in writing to provide insurance coverage before I.C. § 27–8–9–9 applies). Although we determined in *Issue One* that Baker did not voluntarily reject Providence's coverage, I.C. § 27–8–9–9 requires inquiry as to whether Baker placed his insurance policy with Pafco as the primary insurance.

We find that Baker did agree to have his insurance with Pafco to be primary by consenting to the following portion of Paragraph 5 of the rental contract: "Lessor shall provide an automobile liability insurance policy for the benefit of Lessee.... Such insurance shall be excess insurance over any other liability insurance coverage available to Lessee, applicable after coverage under such other available insurance." Record at 273A. Therefore, I.C. § 27–8–9–9 is satisfied. Pafco was the primary insurer under this statute while Providence was the excess insurer in accordance with the insurance policies and I.C. § 27–8–9–9.

*Issue Three*

■ The trial court determined that Baker was not entitled to any coverage by Providence. Baker's policy with Pafco contains an "other insurance" clause which provides:

"If there is other applicable similar insurance available under more than one policy or provision of coverage:

1. Any recovery for damages ... may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance."

Record at 18. The "other insurance" clause is valid under IND.CODE § 27–7–5–5 (Supp.1991). I.C. § 27–7–5–5 provides that a policy may provide that the total limit of all insurers' liability shall not exceed the highest limits under any one policy. Providence argues that no other insurance is available because Baker rejected the coverage by Providence. We decided adversely to Providence's argument in *Issue One*.

Here, Pafco limited coverage to $25,000. Providence's amount of coverage was $60,000. Adhering to the other insurance clause and I.C. § 27–7–5–5, Baker is entitled to $25,000 uninsured motorist benefits from Pafco, and an additional $35,000 from Providence. The recovery of $60,000 is equal to the highest limit under any one policy. Accordingly, we affirm the trial court's final determination that Pafco was the primary insurer, but reverse the judgment finding that Baker was not entitled to

coverage by Providence. We remand with instructions to amend the entry of summary judgment in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

Costs are assessed one-half to Providence and one-half to Pafco.

ROBERTSON and SULLIVAN, JJ., concur.